**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
------------------------------------------------------X

A & E HARBOR TRANSPORT, INC.,                    CIVIL ACTION

                    Plaintiff,                    Case No.: 2:20-cv-18509-SRC-CLW

          v.                    **MOTION RETURN DATE:**
                                          March 1, 2021

TRI-COASTAL DESIGN GROUP, INC.,
and VOTUM ENTERPRISES, LLC,

                 Defendants.

------------------------------------------------------X

---

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS THE AMENDED COMPLAINT**
**AGAINST VOTUM ENTERPRISES LLC PURSUANT TO**
**FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

---

Dated:  January 28, 2021                    Tedd S. Levine, Esq.
                                                  On the brief

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES      i

PRELIMINARY STATEMENT      1

RELEVANT FACTS      2

LEGAL ARGUMENT      5

I.      THE AMENDED COMPLAINT IS DEFICIENT ON ITS
FACE AS TO VOTUM AND MUST BE DISMISSED
AS A MATTER OF LAW PUSUANT TO FEDERAL
RULE OF CIVIL PROCEDURE 12(b)(6).      5

    A.  Legal Standard.      5

    B.  As to Votum, FIRST, SECOND, and FOURTH COUNTS
are implausible.      8

    C.  Plaintiff fails to plead facts sufficient to demonstrate a valid
claim for Unjust Enrichment against Votum as alleged in the
THIRD COUNT.      9

    D.  In the FIFTH COUNT, Plaintiff fails to plead facts that even
remotely lead to a plausible conclusion that successor liability
is ascribed to Votum.      10

CONCLUSION      12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662, 677-78 (2009)       5, 6, 7

*Associated Gen. Contractors of Cal. v. California State Council of Carpenters*,
459 U.S. 519, 526 (1983)       6

*Baraka v. McGreevey*,
481 F.3d 187, 195 (3d Cir. 2007)       6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 550 (2007)       5, 6

*Berg Chilling Sys., Inc. v. Hull Corp.*,
435 F.3d 455 (3d Cir. 2006)       11

*Bistrian v. Levi*,
696 F.3d 352, 365 (3d Cir. 2012)       6, 7

*Comprehensive Spine Care, P.A. v. Oxford Health Ins., Inc.*,
No. CV 18-10036 (JLL), 2018 WL 6445593,
at *6 (D.N.J. Dec. 10, 2018)       8

*Fowler v. UPMC Shadyside*,
578 F.3d 203, 210 (3d Cir. 2009)       6

*Gant v. Ragone*,
No. CV2001727RBKKMW, 2020 WL 6797125,
at *9 (D.N.J. Nov. 19, 2020       9

*Maniscalco v. Brother Intern. Corp. (USA)*,
627 F. Supp. 2d 494, 505 (D.N.J. 2009)       9

*Morrow v. Balaski*,
719 F.3d 160, 165 (3d Cir. 2013)       6

*Portfolio Fin. Servicing Co. ex rel. Jacom Computer Servs. v. Sharemax.com, Inc.*,
334 F. Supp. 2d 620, 624 (D.N.J. 2004)       11

*Ramirez v. Amsted Indus., Inc.*,
86 N.J. 332, 342 (1981)       11

i

**Cases**                                                                 **Page(s)**

*VRG Corp. v. GKN Realty Corp.,*
135 N.J. 539, 641 A.2d 519 (1994)                                             9

*Warren Gen. Hosp. v. Amgen Inc.*,
643 F.3d 77, 84 (3d Cir. 2011)                                                6


**Statutes**

Article 9 of the UCC                                                     1, 3, 10
Federal Rule of Civil Procedure 8(a)                                        5
Federal Rule of Civil Procedure 12(b)(6)                                  5, 6, 12
Federal Rule of Civil Procedure 12(d)                                       7
N.J. Stat. Ann. § 12A:2–201(1), (3)(b)                                      9
Uniform Commercial Code ("UCC")                                             2
UCC § 9-610                                                                10
UCC § 9-611(b)                                                             10
UCC § 9-611(c)                                                             10

## PRELIMINARY STATEMENT

While the Court is required at this stage of the litigation to accept Plaintiff's properly pled factual contentions as true, it should not accept Plaintiff's unsupported conclusions, unwarranted inferences, and legal conclusions couched as factual allegations.   Defendant Votum Enterprises, LLC ("Votum") is not asking the Court to abandon any aspect of this tenet but carefully consider the allegations through the lens of this entire doctrine.

In summary, Plaintiff acknowledges that defendant Tri-Coastal Design Group Inc. ("Tri-Coastal") went out of business when its financing source, namely, Israel Discount Bank of New York ("IDB") stopped lending and later foreclosed on its assets under Article 9 of the UCC.  IDB subsequently sold the bulk of those assets to a third party located outside the United States. Plaintiff doesn't claim Votum purchased Tri-Coastal's assets or a consolidation or a merger occurred.  Likewise, Plaintiff doesn't allege Votum agreed to assume the obligations and debts of Tri-Coastal.  Plaintiff merely argues that because Votum was formed a month before the foreclosure, mistakenly paid a Tri-Coastal bill for approximately $2,500, uses the same lawyer as Tri-Coastal, and has certain employees in common, Votum is now somehow a continuation of Tri-Coastal and obligated for all its debts that equate to over $40,000,000.   In fact, Plaintiff appears to go even further and wants the Court to accept that Votum and Tri-Coastal are actually the same company and the services and goods provided to Tri-Coastal months *before* Votum was even formed were also supplied to Votum.  Clearly, these inferences are farfetched, at best, and outside the realm of reasonable.  Immaterial allegations and a baseless conclusion of successor liability are insufficient to maintain claims against Votum that are properly directed towards Tri-Coastal.

The above said, the Amended Complaint is replete with other farfetched inferences.  The documents that Defendants provide in support of this motion are a matter of public record and/or

referenced in the Amended Complaint.  Each of the documents have been authenticated.  The facts derived therefrom in conjunction with judicial experience and common sense should lead the Court to a determination that the entire action against Votum be dismissed.  In fact, given the chance, even a more heightened degree of factual specificity would not support such claims.

Such matters are addressed more fully below.

## RELEVANT FACTS

On or about April 27, 2007, defendant Tri-Coastal Design Group Inc. and all affiliated companies ("Tri-Coastal"), entered into a loan and security agreement with Israel Discount Bank of New York ("IDB") to finance its operations.  To secure such financing, Tri-Coastal granted IDB Uniform Commercial Code ("UCC") liens on all their business assets; IDB perfected such liens by filing UCC Financing Statements.  The UCC filings and the loan and security agreement referenced in those filings, are a ***public record***.  *See* Levine Dec., ¶2, Ex. A (UCC filings).

Tri-Coastal was formed and in business since 1990.  A ***public record***.

On or about November 30, 2010, Tri-Coastal entered into a restated and amended loan and security agreement with IDB to continue the financing of such entities.  The UCC liens previously granted to IDB were extended.  A ***public record***.

On or about August 24, 2017, Tri-Coastal entered into a further restated and amended loan and security agreement with IDB to continue the financing of such entities.  The UCC liens previously granted to IDB were extended. A ***public record***.

Through the end of calendar year 2017, Tri-Coastal was substantially profitable.  *See* Levine Dec., ¶3.

Commencing 2018, Tri-Coastal began experiencing operational losses due to production problems with certain of its suppliers from China and the imposition of tariffs by the United States

government on Chinese imports. A ***public record***.  The tariff's caused Tri-Coastal to lose significant sales margin, experience cash flow problems, and incur substantial demurrage costs. These financial issues continued into 2020 causing Tri-Coastal to default under its loan and security agreement with IDB and to become significantly in arrears with its unsecured suppliers and landlords.

Commencing 2019, Tri-Coastal commenced an aggressive campaign to find investors and an alternative lender.  With regard to such an effort, Tri-Coastal retained consultants and investment bankers; a business plan was created that included significant cost reductions and debt relief from unsecured creditors.  In view of such effort, IDB was willing to forbear for a certain period of time from foreclosing on its UCC liens.

Between August 3, 2017 and March 12, 2020, Plaintiff and Tri-Coastal did business together, whereby Plaintiff provided trucking services and goods.  *See* ¶4, FIRST COUNT, Amend. Comp.; and ¶2, SECOND COUNT, Amend. Comp.

In or about February 2020, the Covid 19 Pandemic began impacting the United States.  The Pandemic caused nationwide retailers to close and international supply chains for goods to tighten. A ***public record***.  These events caused Tri-Coastal the final blow in their chances to turnaround their business.  Nonetheless, Tri-Coastal continued to aggressively pursue alternative financing and potential investors.

In or about March, 2020, IDB stopped virtually all lending to Tri-Coastal under the IDB restated loan and security agreement.

On or about August 24, 2020, IDB and Tri-Coastal entered into an agreement whereby Tri-Coastal surrendered, delivered, granted, and turned over to IDB, as secured party, peaceful possession of all of their assets (the "Peaceful Possession Agreement") pursuant to Article 9 of the

UCC.[1]  *See* ¶¶4 and 5, FIFTH COUNT, Amend Comp.; *see also,* Levine Dec., ¶4, Ex. B (Peaceful Possession Agreement).   IDB had the unequivocal right to take ownership of all such assets due to its UCC liens and Tri-Coastal's multiple defaults under the IDB restated loan and security agreement.   The unpaid loan amount owed to IDB at the time of the foreclosure was $10,164,401.49.  *Id.*  On that same day, IDB sold certain of the assets it foreclosed on to a third-party investor group located in Italy, namely Take Project Srl ("Take Project").  *See* Levine Dec., ¶5, Ex. C (Bill of Sale).   The sale price of those assets was $1,787,413.35, which was applied against the amount Tri-Coastal owed IDB under the IDB restated loan and security agreement. Tri-Coastal owes approximately $40,000,000 to its unsecured creditors (which includes Plaintiff).

The individual shareholders of Tri-Coastal are Michael Mastrangelo ("Mastrangelo"), who owns 60% and served as Tri-Coastal's President; Marvin Stutz ("Stutz'), who owns 40% and served as Tri-Coastal's Vice President.

Neither Mastrangelo nor Stutz have any ownership interest in Take Project. *See* Levine Dec., ¶6, Ex. D (Take Project formation document); a ***public record***.

Neither Michael Mastrangelo nor Marvin Stutz have received any compensation or distributions of any kind from Tri-Coastal since March, 2020.  Attempting to keep the business from failing, during 2019 and 2020, both Michael Mastrangelo and Marvin Stutz loaned and contributed over $10,000,000 to the capital of Tri-Coastal.  Such amount remains unpaid and is part of Tri-Coastal's unsecured debt.

On July 30, 2020. Votum was formed.  *See* ¶3, FIFTH COUNT, Amend Comp.; *see also,* Votum formation document attached to Amend. Comp.  At the time of formation Tedd S. Levine

---

[1] Litigation would have been the alternative to entering into a Peaceful Possession Agreement which would have resulted in a substantial dissipation of Tri-Coastal' assets and likely the same outcome.

was the sole member.  Since that date, he is no longer a member and Votum is owned by two irrevocable trusts.  *See* Levine Dec., ¶7, Ex. E (Votum Operating agreement).

There is no legal or business connection between Votum and Tri-Coastal.  *See* ¶3, FIFTH COUNT, Amend Comp.; *see also,* Votum formation document attached to Amend. Comp.  Votum never assumed the debts of Tri-Coastal.  Votum operates out of a completely different facility than Tri-Coastal.  Votum established and continues to establish its own relationships with its customers and suppliers.  Votum entered into its own financing arrangements, unrelated to IDB.  Votum uses its own software and business equipment and maintains its own books and records.  Votum utilizes a completely new banking relationship, unrelated to IDB.[2]

**LEGAL ARGUMENT**

I.  **THE AMENDED COMPLAINT IS DEFICIENT ON ITS FACE AS TO VOTUM AND MUST BE DISMISSED AS A MATTER OF LAW PUSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6).**

---

A.  <u>**Legal Standard**</u>.

The Supreme Court holds that the pleading standard of Rule 8(a) requires that the complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). While the complaint may be short and plain, it must also state facts that at least raise a right above a speculative level. *Twombly,* 550 U.S. at 555.

Federal Rule of Civil Procedure 12(b)(6) provides that a cause of action shall be dismissed if a complaint fails "to state a claim upon which relief can be granted."  "To survive a Rule 12(b)(6)

---

[2] As to all these facts, the Amended Complaint does not allege otherwise.

motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.' " *Twombly,* 550 U.S. at 570. "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc*., 643 F.3d 77, 84 (3d Cir. 2011) (citing *Twombly*, 550 U.S. at 555–56). Although a court must accept the fact allegations in a complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Additionally, a court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Pleading standards have shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The Third Circuit requires a three-step analysis to meet the plausibility standard mandated by *Twombly* and *Iqbal*. First, the court should "outline the elements a plaintiff must plead to a state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Next, the court should "peel away" legal conclusions that are not entitled to the assumption of truth. *Id*.; see also *Iqbal*, 556 U.S. at 678-79 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). It is well-established that a proper complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The court should assume the veracity of all well-pled factual allegations, and

then "determine whether they plausibly give rise to an entitlement to relief." *Bistrian*, 696 F.3d at 365 (*quoting* Iqbal, 556 U.S. at 679). A claim is facially plausible when there is sufficient factual content to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The third step of the analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Once the legal baseline against which to measure each claim in the Amended Complaint is established, the allegations not "entitled to the assumption of truth" should be identified.  *Id.* at 1950. Two principal types of such allegations in the Amended Complaint not warranting such an assumption are as follows:  First, there are allegations that are simply too unbelievable to be accepted. In such instances, for example, Plaintiff's allegations lead to a conclusion of the existence of proverbial "little green men," *id.* at 1959 (dissent).  Thus, the Court should disregard implausible factual allegations. Patently implausible factual claims are the antithesis of well-pleaded factual allegations that the Court must accept as true. *Id* at 1949.

Second,  as noted above, assessing the plausibility of a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*  One particularly common use of "judicial experience and common sense" is to justify courts' imagining obvious, alternative, lawful explanations for the alleged conduct that it considers at least as plausible as an explanation involving illegality. Where such alternative explanations exist, it is less likely that the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1950.   It is also noteworthy that *Twombly* and *Iqbal* do not suspend Fed.R.Civ.P 12(d)'s requirement that motions to dismiss relying on facts outside the pleadings be treated as motions for summary judgment.  While Defendants may not introduce their own facts to support their theory of the case, they may challenge Plaintiff's theory

by invoking "obvious" alternative explanations for the alleged facts that rest on a broader background of knowledge and understandings.

**B.  <u>As to Votum, FIRST, SECOND, and FOURTH COUNTS are implausible.</u>**

It appears that Plaintiff is claiming an account stated which is similar to a claim for breach of contract, and requires a plaintiff to prove that there is an "exact and definite balance" for goods delivered or services rendered that can be proven by a statement of account.  See *Comprehensive Spine Care, P.A. v. Oxford Health Ins., Inc.,* No. CV 18-10036 (JLL), 2018 WL 6445593, at *6 (D.N.J. Dec. 10, 2018).

To that end, ¶4 of the FIRST COUNT states, "[b]etween August 3, 2017 and **<u>March 12, 2020</u>** the plaintiff provided trucking and transportation services to the defendant**<u>s</u>**" (emphasis added).  This allegation makes no sense and is entirely implausible when Votum was not even formed until **<u>July 30, 2020</u>**. *Twombly,* 550 U.S. at  570;  *see* ¶3, FIFTH COUNT, Amend Comp.; *see also,* ¶4, FIRST COUNT, Amend Comp., and formation document attach. to Amend. Comp. It is also noteworthy that Plaintiff alleges, on the one hand, "[t]he defendant**<u>s</u>** are corporations" (¶2, FIRST COUNT, Amend Comp.), and later pleads  "Votum Enterprises, **<u>LLC</u>**[3] was formed …" (¶3, FIFTH COUNT, Amend Comp.).  The SECOND COUNT and the FOURTH COUNT flow from these same purported facts.

In addition, as to the SECOND COUNT, Plaintiff alleges, "Plaintiff sues for the reasonable value of ***goods*** and services" (emphasis added).  *See* ¶2, SECOND COUNT, Amend Comp.  That said,  a contract for the sale of goods for the price of $500[4] or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been

---

[3] An LLC is a limited liability company.
[4] Plaintiff claims $126,459.20 is due.

made between the parties and signed by the party against whom enforcement is sought .... N.J. Stat. Ann. § 12A:2–201(1), (3)(b).  Here, Plaintiff makes no reference to or otherwise attaches a writing to warrant a binding agreement.  Again, the FIRST COUNT and FOURTH COUNT are linked to these same purported facts.

C. **Plaintiff fails to plead facts sufficient to demonstrate a valid claim for Unjust Enrichment against Votum as alleged in the THIRD COUNT.**

There are two basic elements of a claim for unjust enrichment. A plaintiff must demonstrate "both that defendant received a benefit and that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.,* 135 N.J. 539, 641 A.2d 519 (1994). New Jersey law also "requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Maniscalco v. Brother Intern. Corp. (USA)*, 627 F. Supp. 2d 494, 505 (D.N.J. 2009); see also, *Gant v. Ragone*, No. CV2001727RBKKMW, 2020 WL 6797125, at *9 (D.N.J. Nov. 19, 2020).

Here, Plaintiff fails to plead that it provided Votum any benefit or that it expected remuneration from Votum at the time it performed or conferred the supposed benefit.  In fact, Plaintiff inexplicably alleges that it conferred a benefit on Votum *before* Votum even existed. Obviously, implausible.

For the reasons stated, Plaintiff's cause of action for unjust enrichment against Votum should be dismissed in its entirety.

**D. In the FIFTH COUNT, Plaintiff fails to plead facts that even remotely lead to a plausible conclusion that successor liability is ascribed to Votum.**

Plaintiff does nothing other than speculate that Votum is Tri-Coastal's putative successor because it *appears* from a small check that was mistakenly paid, and as a result of the two companies having the same counsel and some employees in common, that Votum is a continuation of Tri-Coastal. *See* ¶10, FIFTH COUNT, Amend Comp.; ¶¶4 and 9, FIFTH COUNT, Amend Comp., and attach. to Amend Comp.; *see also,* Levine Dec., ¶8, Ex. F.  Plaintiff admits there was never a sale of Tri-Coastal's assets to Votum or a merger or consolidation of the two companies. In fact, Plaintiff recognizes that Tri-Coastal ceased all operations as a result of foreclosure. *See* ¶6, FIFTH COUNT, Amend Comp., and attach. to Amend Comp.   Plaintiff also accepts that Tri-Coastal's assets were sold by IDB (not Tri-Coastal) to a third party located in Italy. *See* ¶6, FIFTH COUNT, Amend Comp. [5]; *see also,* Levine Dec., ¶5, Ex. C.  Plaintiff, nonetheless, relies on the following to infer "[t]he defendant Votum Enterprises, LLC is a successor interest to the defendant Tri-Coastal Design Group, Inc." (*see* ¶2, FIFTH COUNT, Amend Comp.):   (1) The two companies use the same counsel (*see* ¶¶4 and 9, FIFTH COUNT, Amend Comp.), (2)  a check for $2,815 was mistakenly written for Tri-Coastal out of Votum's account (*see* ¶10, FIFTH COUNT,

---

[5] Plaintiff confuses the notice requirements under the UCC.  As far notifying Plaintiff of IDB's intention to foreclose on Tri-Coastal's assets, and the ultimate sale of certain of those assets to a third-party, Article 9 of the UCC provides that ... a secured party that disposes of collateral under Section 9-610 shall send to the persons specified in subsection (c) a reasonable authenticated notification of disposition. UCC § 9-611(b). Subsection (c) provides that to comply with subsection (b), the secured party shall send an authenticated notification of disposition to: (1) the debtor; (2) any secondary obligor; and (3) if the collateral is other than consumer goods: (A) any other person from which the secured party has received, before the notification date, an authenticated notification of a claim of an interest in the collateral; (B) any other secured party ... UCC § 9-611(c).  Plaintiff does not fall into any of those categories.

Amend Comp.), and (3) Tri-Coastal and Votum have some employees in common (*see* ¶11, FIFTH COUNT).   Under Plaintiff's theory, any time a company goes out of business, and employees from the defunct company work for a different company, and use the same counsel, the new company automatically assumes the obligations of the failed company.  Obviously, not the law.

The ordinary rule of successor liability is rooted in corporate law, and it states that a firm that buys assets from another firm does not assume the liabilities of the seller merely by buying its assets.  *Berg Chilling Sys., Inc. v. Hull Corp.,* 435 F.3d 455 (3d Cir. 2006); see also, *Portfolio Fin. Servicing Co. ex rel. Jacom Computer Servs. v. Sharemax.com, Inc.*, 334 F. Supp. 2d 620, 624 (D.N.J. 2004).  However, there are four recognized exceptions to the general rule where:  (i) the purchaser expressly or implicitly agrees to assume the other company's debts and obligations; (ii) the purchase is a de facto consolidation or merger; (iii) the purchaser is a mere continuation of the seller; or (iv) the transfer of assets is for the fraudulent purpose of escaping liability. *Id.* at 625.  None of these exceptions apply here.   While Plaintiff attempts to satisfy the third and fourth exceptions by providing a formulaic recitation that "Votum Enterprises, LLC is the legal successor to the liabilities of Tri-Coastal Design Group, Inc, is a mere continuation of Tri-Coastal Design Group, Inc., and/or the transfer of  interest was entered into fraudulently to escape liability", it fails to  recognize  that  such  exceptions  are  in  the  context  of  one  company  selling  or  otherwise transferring all its assets to another company.  *Id.* at 624.  To establish successor liability based on "mere continuation," Plaintiff must "establish that there is continuity in management, shareholders, personnel, physical location, assets and general business operation between selling and  purchasing  corporations  ***following  the  asset  acquisition***" (emphasis added). *Ramirez v. Amsted Indus., Inc.*, 86 N.J. 332, 342 (1981).  As a fundamental matter, not only wasn't there any allegations as to physical location, assets and general business operation, there was actually a

foreclosure and a sale by a third-party bank to a completely unrelated company outside the country. There was no "continuity between [the] selling and purchasing corporations."   The Amended Complaint acknowledges these facts.  *See* ¶6, FIFTH COUNT, Amend Comp.; *see also,* Levine Dec., ¶5, Ex. C (Bill of Sale).

Thus, Plaintiff has not pled the elements for successor liability, nor sufficient factual matter to suggest Votum is a successor-in-interest to Tri-Coastal and allegedly responsible for its debts and obligations.  Viewed as a whole and in the light most favorable to Plaintiff, Plaintiff has failed to allege sufficient facts to support a *prima facie* case for successor liability.

## CONCLUSION

For the reasons stated above, this action should be dismissed in all respects against Votum for failure of the Amended Complaint to state a claim on which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6).

Dated:  January 28, 2021                           LAW FIRM OF TEDD S. LEVINE, LLC


By:   /s/Tedd S. Levine_____
      Tedd S. Levine, Esq.
      31 Dock Rd., Suite 162
      Remsenburg, NY 11960
      Tel:  (516) 770-3131
      email: lawofficesofteddslevine@ gmail.com

      *Attorneys for Defendant*
      *Votum Enterprises, LLC*