**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY**

-----------------------------------------------------X

A & E HARBOR TRANSPORT, INC.,                    **CIVIL ACTION**

                 Plaintiff,                    Case No.: 2:20-cv-18509-SRC-CLW

       v.                    **MOTION RETURN DATE:**
                                               March 1, 2021

TRI-COASTAL DESIGN GROUP, INC.,
and VOTUM ENTERPRISES, LLC,

               Defendants.

-----------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS THE
AMENDED COMPLAINT AGAINST VOTUM ENTERPRISES LLC PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Dated:  February 16, 2021                    Michael Schwartzberg, Esq.
                                                On the brief

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES

i

PRELIMINARY STATEMENT                                                    1

RELEVANT FACTS                                                          2

LEGAL ARGUMENT                                                          3

I.      THE AMENDED COMPLAINT PLEADS A VALID
        CAUSE OF ACTION AGAINST VOTUM UNDER
        FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6).


    A. Legal Standard.                                                  3


    B. Counts One, Two, Three and Four do not apply to Votum.          4


    C. Count Five of the Complaint, along with all reasonable inferences that
       can drawn therefrom, and the evidence produced in this motion, show a
       compelling legal claim for successor liability against Votum.   5


CONCLUSION                                                             13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*40 Eisenhower Drive, LLC v. Karoon Capital Markets, Inc.*,          5
2014 N.J. Super. Unpub. LEXIS 2860 (N.J. App. Div. Dec. 11, 2014).

*Bell Atl. Corp. v. Twombly*,          4
550 U.S. 544, 550 (2007)

*Glynwed, Inc. v. Plastimatic, Inc.*,          5
869 F.Supp. 265, 275-76 (D.N.J. 1994)

*Ramirez v. Amsted Industries, Inc.*,          6
86 N.J. 332 (1981).

*Warren Gen. Hosp. v. Amgen Inc.*,          3
643 F.3d 77, 84 (3d Cir. 2011)

*Woodrick v. Jack J. Burke Real Estate, Inc.,*          5
306 N.J. Super. 61, 73 (App. Div. 1997)

**Statutes**

Federal Rule of Civil Procedure 12(b)(6)          3

## PRELIMINARY STATEMENT

The plaintiff A & E Harbor Transport Inc. opposes the defendant's motion to dismiss the complaint for failure to state a cause of action upon which relief can be granted under FRCP 12(b)(6).

The crux of Votum's motion is that Votum and Tri-Coastal Design Group Inc. ("Tri-Coastal) are sufficiently different companies such that the obligations of Tri-Coastal should not be imposed on or imputed to Votum. Votum states that plaintiff does not claim Votum agreed to assume the obligations and debts of Tri- Tri-Coastal. However, that is exactly what the plaintiff is alleging in this case. It is in fact what happened, whether by written agreement, oral agreement, constructively or by course of conduct. The defendant's motion fails to recognize most of the salient facts of the plaintiff's claim.

Votum paints this case as no more than a mistaken payment of a check by two companies with the same attorney and some employees in common. Votum's motion says no more than that.

However, there is so much more to this case, including the very documents which the defendant provides in support of its motion, which the defendant is either unaware of or has chosen to ignore. The evidence for plaintiff's claim in this case crosses the threshold in several areas. They include, but are not limited to, the timing, ownership, management, operations, customers, counsel and payments of obligations. The evidence in this case will show that the affairs of these two companies are so intertwined with each other as to blur the lines of distinction.

The plaintiff need not prove successor liability at this point, just to allege enough to allege a cause of action.

1

## RELEVANT FACTS

The plaintiff is in the trucking business. Between August 3, 2017 and March 12, 2020 the plaintiff provided trucking and transportation services to Tri-Coastal. There is due and owing $126,459.20 to the plaintiff.

The plaintiff accepts Votum's representations that Tri-Coastal was formed in 1990; that it granted UCCs on assets in favor Israel Discount Bank of New York ("IDB"); that it subsequently restated the loan; that it ran into financial difficulty in 2018 due to world events; that it hired the plaintiff for trucking services; that on August 24, 2020, Tri-Coastal surrendered assets to IDB" pursuant to agreement; that IDB subsequently sold those assets to an unrelated third party; and finally that sale of those assets left a deficiency to IDB which is currently owed. The exhibits to support the foregoing, which were attached to Votum's motion, are not disputed.

However, Votum then goes on to make unfounded and inadmissible allegations as to the nature of Votum's business and its relationship to Tri-Coastal. The plaintiff has no evidence formost of these allegations, nor does the Court.

The following unsworn allegations must be disregarded and have no place in consideration of a 12(b)(6) motion: that Votum operates out of a completely different facility than Tri-Coastal; that Votum has its own relationships with its customers and suppliers; that Votum entered into its own financing arrangements unrelated to IDB; that Votum uses its own software and business equipment and maintains its own books and records; and finally that Votum utilizes a completely new banking relationship, unrelated to IDB.

The factual evidence in this case, and the reasonable inferences that can be drawn therefrom, more than establish a cause of action against Votum.

**LEGAL ARGUMENT**

**I.     THE AMENDED COMPLAINT, THE EXHIBITS AND OTHER EVIDENCE ESTABLISH A CAUSE OF ACTION AGAINST VOTUM WARRANTING DENIAL OF THE VOTUM'S MOTION.**

**A.     <u>Legal Standard</u>.**

The legal standard of a 12(b)(6) motion is very well-established in law and need not be recited at length here.  Further, the legal standard was laid out in the defendant's motion to dismiss which is briefly summarized as follows:

FRCP 12(b)(6) provides that a cause of action shall be dismissed if a complaint fails "to state a claim upon which relief can be granted." "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Twombly*, 550 U.S. at 555–56).

**B.**     **<u>Counts One, Two, Three and Four do not apply to Votum.</u>**

Counts One, Two, Three and Four of the amended complaint apply to Tri-Coastal.  They are not addressed against Votum.  The plaintiff so stipulates and no further discussions is necessary.

**C.**      **Count Five of the Complaint, along with all reasonable inferences that can drawn therefrom, and the evidence produced in this motion, show a compelling legal claim for successor liability against Votum.**

Under New Jersey law, a company is liable under successor liability where (1) the successor expressly or impliedly assumes the predecessor's liabilities; (2) there is an actual or de facto consolidation or merger of the seller and the purchaser; (3) the purchasing company is a mere continuation of the seller; or (4) the transaction is entered into fraudulently to escape liability." *40 Eisenhower Drive, LLC v. Karoon Capital Markets, Inc*., 2014 N.J. Super. Unpub. LEXIS 2860 (N.J. App. Div. Dec. 11, 2014).

In addition where, as here, the claim is made that a particular transaction amounts to *a de facto* consolidation of the selling and buying companies, or the mere continuation of the selling company by the purchaser, the courts consider four factors:

(i) continuity of management, personnel, physical location, assets, and general business operations; (ii) a cessation of ordinary business and dissolution of the predecessor as soon as practically and legally possible; (iii) assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the predecessor; and (iv) continuity of ownership/shareholders. *Woodrick v. Jack J. Burke Real Estate, Inc.,* 306 N.J. Super. 61, 73 (App. Div. 1997); *Glynwed, Inc. v. Plastimatic, Inc*., 869 F.Supp. 265, 275-76 (D.N.J. 1994).

All of these factors need not be present for finding that a de facto merger or continuation has occurred. Rather, the crucial inquiry is whether there was an intent on the part of the companies to effectuate a merger or consolidation rather than a sale of assets.  Courts have held that successor corporate liability can apply even if the only assets transferred are intangible, such as goodwill and a customer list. *Glynwed*, supra; *Luxliner P.L. Export, Co. v. RDI/Luxliner,*

*Inc.,* 13 F.3d 69, 73 (3rd Cir.1993).

Votum cites the case of *Ramirez v. Amsted Industries, Inc.*, 86 N.J. 332 (1981). The factors involved in the *Ramirez* case were directed to asset acquisition sales. That is why Votum highlights the words "following the asset acquisition" with emphasis in its argument. *See* Votum Memo of Law, Page 11, second paragraph. In the case at bar there was a voluntary transfer of assets in exchange for partial satisfaction of debt. However, the concept is ostensibly the same since the case at bar involves a *de facto* merger and/or successorship.

The relevant factors are discussed as follows:

<u>Timing of Events:</u>

The timing of events in this case supports the plaintiff's claim. Michael Mastrangelo and Marvin Stutz were the owners and officers of Tri-Coastal. Votum was then formed on July 30, 2020 as per the filed certificate of formation. *See* Exhibit to AMEND COMP. Less than one month later, on August 24, 2021, Tri-Coastal then executes the Peaceful Possession of Collateral agreement. Within days thereafter, both Michael Mastrangelo and Marvin Stutz suddenly became owners and officers of Votum. *See* Exhibit to AMEND COMP); *See* Tedd Levine's letter to Tri-Coastal creditors (Exhibit to AMEND COMP).

During this turn of events, Votum repeatedly represents that the assets of Tri-Coastal were "foreclosed" by IDB. Votum makes that representation on multiple occasions. *See, e.g.,* Votum Memo of Law, Page 4, 3rd sentence; *See* Votum Memo of Law, Page 11, last sentence. In fact, in his letter dated September 18, 2020 sent to the creditors of Tri-Coastal, Mr. Levine notified *all* Tri-Coastal's creditors, in writing, that IDB "foreclosed on its perfected security interest and took ownership of all of all of Tri-Coastal Designs assets." (Exhibit to AMEND COMP).

6

However, those representations were falsehoods.  As shown by the Peaceful Possession of Collateral, the assets of Tri-Coastal were *voluntarily and peacefully transferred* to IDB.  *See* Votum Memo of Law, Exhibit B.  No court action was ever taken.  To state the assets were "foreclosed" gives a false impression of what really happened.  (It is irrelevant what IDB did with those assets after they were surrendered although, as noted by Votum, they were sold to a third party).

It gets worse.  The Court is now directed to the last page of the Peaceful Possession of Collateral (and described in the last page as Exhibit A therein).  That exhibit clearly sets forth the assets that Tri-Coastal surrendered to IDB and those that Tri-Coastal retained for itself.  Tri-Coastal only transferred *some* of its assets to IDB.  Tri-Coastal kept the following assets which were referred to as "Excluded Assets":  Debtor's accounts receivable, Custom reclamation claims and refunds, Cash on hand with each [of 6] debtors and **$1,200,000** of debtor's cash collateral. Although the value of the accounts receivable, reclamation claims and cash on hand is not stated in the agreement, they clearly must have been valuable enough to have subject of a carve-out and was likely in line with the amount of the $1,200,000 cash collateral.

So, not only did Tri-Coastal lie to its creditors that its assets were "foreclosed" but it also advised them that "all" of the assets were gone.  Then, it advised the creditors that they were "no longer in business."  But the assets were not foreclosed.  They were voluntarily surrendered.  And only some the assets were surrendered, not all of them.  Nor, as plaintiff herein contends, was it out of business.

So, Tri-Coastal lied to its creditors about being foreclosed on while, at the same time, held onto to assets.  Why would Tri-Coastal make these misrepresentations to its creditors?  One must view that query from the viewpoint of a credit of Tri-Coastal.  Would a creditor be inclined

to take action to collect money?  Clearly not.  In fact, if it weren't for the botched payment of the check then even the plaintiff herein would have likely written its debt off.  One reasonable inference is that it planned to use the money for a continuation of its business.  At the time same, Tri-Coastal negotiate to keep these valuable assets in an effort to protect Votum.

It cannot just be coincidence that Votum started came into existence just **prior to** Tri-Coastal formally notifying its creditors that it was "no longer in business."  While it may be true that same was done for legitimate purposes, it is also reasonable to conclude, as we are legally required to, that Votum is a *de facto* successor to Tri-Coastal.

<u>Employees:</u>

Next, it is clear that at least some employees of Tri-Coastal, if not all, have been switched to Votum.  *See* Votum Memo of Law, Exhibit F.   Exhibit F shows an email sent on September 21, 2020 from Tri-Coastal to the plaintiff.  The subject of the email was "A&E Check" and concerns $2,815 owed from Tri-Coastal to the plaintiff.   The email was sent to the following recipients of Tri-Coastal: <u>edith@tricoastalnj.com</u>, <u>jmendoza@tricoastalny.com</u>, and <u>dennisjr@tricoastalnj.com.</u>  These are clearly all employees of Tri-Coastal as shown by the Tri-Coastal email domain.  There were NO employees of Votum on that email.  Votum was not even privy to that email**.  Yet, on September 21, 2020, *the same date as the email,* lo and behold, Votum (not Tri-Coastal) *handwrites* a check for payment to the plaintiff in full!**  This is undisputed.  It is unclear how a Tri-Coastal invoice could make its way to Votum and then be paid.  However, it is clear that there must have employees in common in order for that to happen.

*The payment of the check under these circumstnaces is a smoking gun that, in and of itself, defeats a 12(b)(6) motion.*

Of course, Votum offers no explanation other than to claim it was a "mistake."  *See*

Votum Memo of Law, Page 10, ¶ 1, last sentence.  This assertion is ridiculous and evasive. There there is no evidence that it was a mistake.  Companies just don't mistakenly pay debts of other companies; that defies business experience and common sense.  Did Votum ever reimburse Tri-Coastal for its "mistake"? Apparently not.  At the very least, it is more than reasonable to conclude that the two entities are co-mingled in such a fashion that Votum is a successor to Tri-Coastal.

<u>Ownership, Management and Operation:</u>

The owner of Tri-Coastal is Michael Mastrangelo.  This is admitted by the defendant in its motion.  As stated in Mr. Levine's Memo of Law, the individual shareholders of Tri-Coastal are Michael Mastrangelo who owns 60% and served as Tri-Coastal's President and Marvin Stutz who owns 40% and served as Tri-Coastal's Vice President.  *See* Votum Memo of Law, Page 4, ¶2.

However, now please refer to the Operating Agreement of Votum.  Michael Mastrangelo is the Operating Manager.  *See* Exhibit E, Section 5.6. Michael Mastrangelo is the President.  *See* Exhibit E, Schedule A.  *See* Exhibit E, Schedule A.  Then, on Schedule D it appoints Michael Mastrangelo as President and Marvin Stutz as Co-President of Votum.  *See* Exhibit E, Schedule A.

Thus, Michael Mastrangelo was a co-owner of Tri-Coastal.  Marvin Stutz was a co-owner of Tri-Coastal. Michael Mastrangelo is now the President and Operating Manager of Votum.  Likewise, Marvin Stutz is Vice-President of Votum.

It is also curious to note that Beth Mastrangelo is listed as co-Trustee of Prego Trust, which owns one-half of Votum.  Beth Mastrangelo has never had any other interest in either company and presumably is not involved in Votum other than by name.

Can it be mere coincidence that the owners and players are the same?  No.  It is more than reasonable to conclude, which the Court must, that the owners and officers of both companies are effectively the same.  The officers are admitted the same.  And it is certainly reasonable to infer that Michael Mastrangelo, and/or and his wife Beth Mastrangelo, and/or Marvin Stutz are the *de facto* owners Votum.

<u>Business Separation of Records:</u>

Votum states that "Votum uses its own software and business equipment and maintains its own books and records." *See* Votum Memo of Law, Page 5, ¶ 1.  However, that statement is clearly false.  If Votum and Tri-Coastal indeed had different software, books, records, and banks then it would have *impossible* for Votum to have paid the debt of Tri-Coastal.  Again, Votum argues that it was a mistake which, as shown, above, would not be possible.

Recall that Votum was formed on July 30, 2020. *See* Certificate of Formation as exhibit to AMEND COMP. Yet, the check it used to pay for the Tri-Coastal was written on September 21, 2020, almost two months later. Further, the Votum check was **Check# 1001** and was handwritten.  Why?  It is reasonable to assume that this was the very first check written by Votum in continuance of the operations of Tri-Coastal as the plaintiff contends.

Can this simply be a mistake?  One reasonable inference is that the two business are financial connected or even the same company.  Which leads us directly to the other business dealings of Votum.

<u>Line of Business:</u>

Both companies were wholesalers of gifts, cosmetics, bath products, stationary and apparel.  As to Votum, a simple review of its filed Certificate of states that its purpose is

"Wholesale of gift products, namely cosmetics, bath & body products, stationary products, and apparel accessories."  *See* Certificate of Formation as exhibit to AMEND COMP.

As to Tri-Coastal, its business was identical.  The UCC attached as Exhibit A provides a laundry list of products all of which are the same types of products.  There are too many to list here, but some examples of those products are Fun in the Sun Flowers, Christmas Robins, Clouds & Flying Saucers, Summers stems, Paisley Passions, Pink Bubble, Personal Best, Island Girl, Bubble Princess, Happy Easter, Butterfly Rainbow, etc.  *See* Votum Memo of Law, Exhibit A.  Thus, the business line of the two companies is identical.  Can this be a coincidence?  One reasonable inference is that this is part of a bigger picture where Votum is the successor to Tri-Coastal.

<u>Legal Counsel:</u>

The attorney for Tri-Coastal was Tedd Levine, Esq.  He was the attorney of record when Tri-Coastal negotiated with and ultimately reached agreement with IDB for the voluntary surrender of some of Tri-Coastal's assets to IDB and for Tri-Coastal's retention of other assets.  Mr. Levine also prepared and mailed a letter to Tri-Coastal's creditors informing them that Tri-Coastal was "out of business".  *See* Exhibit to AMEND COMP.

Now, Mr. Levine reappears as the attorney for Votum.  Mr. Levine has filed the within motion, not on behalf of Tri-Coastal but now on behalf of co-defendant Votum.  Mr. Levine also executed the Certificate of Formation of Votum as Trustee of Prego Trust.  Curiously, the Certificate of Formation for Votum shows that Tedd S. Levine was the only member of the Votum, and also the only authorized representative of Votum. *See* Exhibit to AMEND COMP.

Now, Mr. Levine states that is no longer a member of Votum and that Votum is now owned by two trusts.  *See* Levine Dec., ¶7.  Mr. Levine does not state the terms, conditions or

circumstances for the transfer of his interest to the trusts.  That remains a mystery.

Mr. Levine is the attorney for Tri-Coastal, attorney for Votum, and a former member of Votum.  It is unclear how Mr. Levine can continue to represent Votum under these circumstances.  In any event, the real point is that this type of inside dealing is exemplary of what is happening behind the scenes between Tri-Coastal and Votum.  This is just one more connection between the two companies and raises eyebrows and more questions than it  answers.


<u>Summary:</u>

The facts surrounding payment of the check, by itself, is the smoking gun that defeats a 12(b)(6) motion.  In addition, a very strong inference must be drawn that the identities of the two companies have blurred, to wit: customer lists, legal counsel, lack of transparency, employees, management, ownership and the timing of events.

## CONCLUSION

The foregoing, viewed in the light most favorable to Plaintiff, clearly and demonstrably shows sufficient facts to support a *prima facie* case for successor liability.  One can reasonably conclude, and it has been so plead, that Votum and Tri-Coastal that there is a blurred commonality of principals, owners employees, customer lists and businesses.  One can further reasonably conclude that the nature of the businesses and operations are the same.  There is more than enough evidence to support these conclusions.

When viewed in its entirety, in the light most favorable to the plaintiff, the above clearly and conclusively shows that the plaintiff has a clear and valid claim against Votum.  If, perhaps, Votum can prove its defense of mistake then it can file a motion accordingly.  Until then the plaintiff is entitled to proceed with discovery.

However, in the event that the Court opines that the complaint does not sufficiently state a cause of action then it is requested that the plaintiff be given an opportunity to filed an amended complaint to address any deficiencies.

For the reasons stated above, the defendant's motion should be denied at this stage of the litigation or, in the alternative, the plaintiff be allowed to file an amended pleading.

Dated:  February 16, 2021                    MICHAEL SCHWARTZBERG

By:   /s/ *Michael Schwartzberg*
650 Bloomfield Avenue, Suite 100
Bloomfield, NJ 07003
email: michael@jerseylaws.com
*Attorneys for Plaintiff*

13