UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
---------------------------------------------------------X
A & E HARBOR TRANSPORT, INC.,                    CIVIL ACTION

                Plaintiff,                Case No.: 2:20-cv-18509-SRC-CLW

        v.                                MOTION RETURN DATE:
                                                     March 1, 2021

TRI-COASTAL DESIGN GROUP, INC.,
and VOTUM ENTERPRISES, LLC,

                Defendants.

---------------------------------------------------------X


**MEMORANDUM OF LAW IN REPLY TO OPPOSITION TO
MOTION TO DISMISS THE AMENDED COMPLAINT
AGAINST VOTUM ENTERPRISES LLC PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**


Dated:  February 17, 2021                                                 Tedd S. Levine, Esq.
                                                                                                 On the brief

# TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | i |
| PRELIMINARY STATEMENT | 1 |
| SUPPLEMENTAL RELEVANT FACTS | 2 |
| ARGUMENT | 3 |
|     I. PLAINTIFF FAILED TO STATE A CAUSE OF ACTION UPON WHICH RELIEF CAN BE GRANTED FOR SUCCESSOR LIABILITY. | 3 |
|     II. THE FACTS PLAINTIFF RELY UPON DO NOT AS A MATTER OF LAW GIVE RISE TO A CLAIM FOR SUCCESSOR LIABILITY. | 7 |
|     III. THE COURT HAS THE POWER TO TREAT A 12(b)(6) MOTION AS A MOTION FOR SUMMARY JUDGMENT. | 9 |
| CONCLUSION | 10 |

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................................9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 555–56 (2007) .........................................................................................4, 9

*Berg Chilling Sys., Inc. v. Hull Corp.*,
435 F.3d 455 (3d Cir. 2006) ................................................................................................4

*Portfolio Fin. Servicing Co. ex rel. Jacom Computer Servs. v. Sharemax.com, Inc.*,
334 F. Supp. 2d 620, 624 (D.N.J. 2004) .........................................................................4, 7

*Glynwed, Inc. v. Plastimatic, Inc.*,
869 F.Supp. 265, 275-76 (D.N.J. 1994) ..........................................................................4, 7

*Ramirez v. Amsted Indus., Inc.*,
86 N.J. 332 (1981) ...............................................................................................................6

*Warren Gen. Hosp. v. Amgen Inc.*,
643 F.3d 77, 84 (3d Cir. 2011) ............................................................................................3

*Woodrick v. Jack J. Burke Real Estate, Inc.*,
306 N.J. Super. 61, 73 (App. Div. 1997) .........................................................................4, 7

**Statutes**

Article 9 of the Uniform Commercial Code ................................................................1, 6, 7
Fed.R.Civ.P 12(b)(6) ...................................................................................................1, 3, 10
Fed.R.Civ.P 12(d) ..................................................................................................................9
UCC 9-601, *et seq.* ............................................................................................................1, 5
UCC 9-607 ............................................................................................................................5
UCC 9-610 ............................................................................................................................5
UCC 9-620 ............................................................................................................................5

## PRELIMINARY STATEMENT

This action should be dismissed against Defendant Votum Enterprises, LLC ("Votum") pursuant to Rule 12(b)(6) because as a central matter Plaintiff failed to plead a cause of action upon which relief can be granted for successor liability.  Here, Plaintiff concedes that the prerequisite to find successor liability is that the purported successor must be the actual purchaser of the predecessor's assets.  Nonetheless, nowhere does the Amended Complaint even remotely allege that Votum purchased the assets of Tri-Coastal or otherwise assumed its liabilities. This is because it didn't happen.  The Amended Complaint merely, states that because the two companies have the same counsel, have some employees in common, and mistakenly wrote a check out of the wrong bank account, Votum is now liable for all of Tri-Coastal's debts.

The above said, in an attempt to sway the Court into believing that there was no foreclosure, Plaintiff argues Tri-Coastal *lied* to its creditors about the transaction.  Plaintiff, however,  clearly misunderstands what Article 9 of the Uniform Commercial Code ("Article 9") permits with regard to a lender having a right to *peacefully* foreclose on assets of its borrower, and what the foreclosure documents actually provide. Consequently, Plaintiff incorrectly concludes there was no foreclosure, that Tri-Coastal retained assets for itself, and that a so-called "coincidence" of Votum being created a month before the foreclosure gives rise to grounds for successor liability.

Article 9 of the UCC prescribes a statutory framework governing the foreclosure process for security interests in personal property.  The default provisions of Chapter 6 of the Revised Uniform Commercial Code (the "Code") commencing at Section 9-601 through 9-629 set forth these security interests.  Tri-Coastal's assets were divided into two separate buckets:  The so-called "Surrendered Collateral", which was sold by the lender to a third-party, and the "Excluded Assets" which were retained by the *lender*, liquidated, and the proceeds

1

applied towards the unpaid loan.  Clearly, based on a substantial shortfall, none of Tri-Coastal's assets are available to unsecured creditors.   In fact, the math alone fails to support Plaintiff's contentions (see fn. 2 below).  Clearly, Tri-Coastal didn't "lie" to its creditors.

Defendant respectfully refers the Court to the discussion below and its motion papers in support hereof.

## SUPPLEMENTAL RELEVANT FACTS

On or about August 24, 2017, Tri-Coastal entered into a restated and amended loan and security agreement with Israel Discount Bank of New York ("IDB") to continue the financing of such entities. *See* Levine Dec. in Reply, ¶2, Ex. A (IDB Loan Agreement).  The UCC liens previously granted to IDB were extended. *See* Levine Dec. in Support, ¶2, Ex. A; also, a ***public record***.

On or about August 24, 2020, IDB and Tri-Coastal entered into an agreement whereby Tri-Coastal surrendered, delivered, granted, and turned over to IDB, as secured party, peaceful possession of all of their assets (the "Peaceful Possession Agreement") pursuant to Article 9 of the UCC.[1]  *See* Levine Dec. in Support, ¶4, Ex. B (Peaceful Possession Agreement).  IDB had the unequivocal right to take ownership of all such assets due to its UCC liens and Tri-Coastal's multiple defaults under the IDB restated loan and security agreement.  The unpaid loan amount owed to IDB at the time of the foreclosure was $10,164,401.49.  *Id*.  On that same day, IDB sold certain of the assets it foreclosed on to a third-party investor group located in Italy, namely Take Project Srl ("Take Project").  *See* Levine Dec. in Support, ¶5, Ex. C (Bill of Sale).  The sale price

---

[1] Litigation would have been the alternative to entering into a Peaceful Possession Agreement which would have resulted in a substantial dissipation of Tri-Coastal' assets and likely the same outcome.

2

of those assets was $1,787,413.35, which was applied against the amount Tri-Coastal owed IDB under the IDB restated loan and security agreement. Tri-Coastal owes approximately $40,000,000 to its unsecured creditors (which includes Plaintiff).

Contemporaneous with the signing of the Peaceful Possession Agreement and the Bill of Sale, IDB and the borrowers entered into a letter agreement which is referenced in the Peaceful Possession Agreement.[2] *See* Levine Dec. in Reply, ¶3, Ex. B (Letter Agreement). The Letter Agreement merely states, what has already been established by the UCC filings, that "Lender's liens on and security interest in the Excluded Assets … remain in full force and effect …". *Id.,* at ¶1. Thus, all US Customs reclamations, the **$1,200,000 of cash collateral** held by IDB to secure a letter of credit to US Customs, and all accounts receivables, etc., "shall be applied by Lender to reduce Borrowers' Obligations under the Loan Agreement." See *Id.,* at ¶¶3 and 4.

## ARGUMENT

### I. PLAINTIFF FAILED TO STATE A CAUSE OF ACTION UPON WHICH RELIEF CAN BE GRANTED FOR SUCCESSOR LIABILITY.

"Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the Amended Complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v.*

---

[2] It is noteworthy that the documents provided in support of this motion demonstrate the following: **(1)** IDB had a perfected security interest in all the assets of Tri-Coastal which it foreclosed on (*see* Levine Dec. in Support, ¶¶2,4 and 5, Ex. A (UCC Filings), Ex. B (Peaceful Possession Agreement), and Ex. C (Bill of Sale)); **(2)** at the time of foreclosure, **IDB was owed $10,164,401.49** (see Levine Dec. in Support, ¶4, Ex. B, ¶1(a) (Peaceful Possession Agreement)); and **(3)** the Surrendered Collateral was **sold to Take Project for $1,787,413.35** (see Levine Dec. in Support, ¶5, Ex. C, ¶2 (Bill of Sale), considerably less than the amount IDB was owed. Thus, Plaintiff's conclusion that Tri-Coastal "retained" assets is further belied by these facts in view of IDB's foreclosure on all the assets of the company and its right to apply those assets towards the unpaid amount of its loan.

3

*Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

Successor liability is rooted in corporate law, and it states that a firm that buys assets from another firm does not assume the liabilities of the seller merely by buying its assets. *Berg Chilling Sys., Inc. v. Hull Corp.,* 435 F.3d 455 (3d Cir. 2006); see also, *Portfolio Fin. Servicing Co. ex rel. Jacom Computer Servs. v. Sharemax.com, Inc.*, 334 F. Supp. 2d 620, 624 (D.N.J. 2004). There are four recognized exceptions to the general rule where:  (i) the purchaser expressly or implicitly agrees to assume the other company's debts and obligations; (ii) the purchase is a de facto consolidation or merger; (iii) the purchaser is a mere continuation of the seller; or (iv) the transfer of assets is for the fraudulent purpose of escaping liability. *Id.* at 625. All of these factors need not be present for finding that a de facto merger or continuation has occurred. Rather, "[t]he crucial inquiry is whether there was an intent on the part of the contracting parties to effectuate a merger or consolidation rather than a sale of assets." See *Woodrick v. Jack J. Burke Real Estate, Inc.*, 306 N.J. Super. 61, 73 (App. Div. 1997) (quoting *Glynwed, Inc. v. Plastimatic, Inc.*, 869 F.Supp. 265, 275-76 (D.N.J. 1994)).

Here, there is no question of fact. Plaintiff did not plead that Votum purchased the assets of Tri-Coastal. This is because all the assets of Tri-Coastal were foreclosed on by IDB, a portion of those assets were subsequently sold to a third-party, and Votum didn't purchase the assets or assume any of Tri-Coastal's liabilities. *See* Levine Dec. in Support, ¶¶1-8, Ex. A-Ex. F; *see also,* Levine Dec. in Reply, ¶¶2 and 3, Ex. A and Ex. B. Moreover, there could not have been any intent on the part of the contracting parties, namely, IDB and Take Project, to effectuate a merger or consolidation of Tri-Coastal and Votum since Votum wasn't a party to the transaction. See *Woodrick*, 306 N.J. Super. at 73 (quoting *Glynwed, Inc.*, 869 F.Supp. at 276). There is no dispute

4

nor can there be any disagreement as to these facts. In fact, there is nothing in the Amended Complaint that even hints at Votum acquiring the assets; thus, on this basis alone a claim of successor liability is inapposite. Since the lynchpin of such a claim hasn't been pled, there is no reason for the Court to even consider whether any of the exceptions apply.

The above said, Plaintiff attempts to spin a scenario that IDB didn't foreclose on Tri-Coastal's assets and somehow there was really a merger and consolidation by and between Tri-Coastal and Votum. Plaintiff's farfetched theory is based upon the transaction not being consummated in an adversary proceeding before a court but instead through a Peaceful Possession agreement. Plaintiff is plainly wrong. Article 9 provides a secured party with choice of remedies upon the occurrence of an "Event of Default" upon an obligation secured by personal property:

- Foreclosure by Private Sale [9-610]
- Foreclosure by Public Sale [9-610]
- Acceptance of Collateral [9-620]
- Judicial Enforcement [9-601]
- Collection Rights [9-607]

Plaintiff is obviously confused in its belief that because "[n]o court action was ever taken" there was no foreclosure.

As far as the foreclosure documents themselves, Plaintiff argues that Tri-Coastal maintained ownership of the referenced "Excluded Assets". Likewise, a nonsensical conclusion. More specifically, IDB's liens on and security interest in the Excluded Assets and in all other collateral securing the loan remain in full force and effect. In fact, the parties signed a letter agreement which is referenced in the Peaceful Possession agreement (*see* Levine Dec. in Support, ¶4, Ex. B (Peaceful Possession Agreement)) that confirms all such assets "shall be applied by Lender to reduce Borrowers' Obligations under the Loan Agreement." *See* Levine Dec. in Reply, ¶3, Ex. B (Letter Agreement).

5

Consequently, there has been no deception. Tri-Coastal's lender, IDB, rightfully foreclosed under Article 9 and took possession of **all the assets** of the company. The Surrendered Collateral was sold to a third-party (*see* Levine Dec. in Support, ¶5, Ex. C, ¶2 (Bill of Sale) and the **Excluded Assets were retained by IDB**, liquidated, and the proceeds are being applied towards its unpaid loan. Clearly, based on the shortfall in the loan, the Excluded Assets were not and never will be available to unsecured creditors. At the time of foreclosure, IDB was owed $10,164,401.49 (*see* Levine Dec. in Support, ¶4, Ex. B, ¶1(a) (Peaceful Possession Agreement)), and the Surrendered Collateral was sold to Take Project for $1,787,413.35 (*see* Levine Dec. in Support, ¶5, Ex. C, ¶2 (Bill of Sale), which left owed to IDB considerably more than the proceeds recovered from the Surrendered Collateral. As a result, IDB is in the process of collecting the Excluded Assets and applying those proceeds to reduce its loan. In fact, after everything is said and done, IDB agreed to accept a shortfall of $1,325,000. *See* Levine Dec. in Reply, ¶3, Ex. B, ¶6(a) (Letter Agreement). Plaintiff's conclusion that Tri-Coastal "retained" assets is clearly a non-starter.

With regard to *Ramirez v. Amsted Indus., Inc.*, 86 N.J. 332 (1981), Plaintiff once again, misreads what is before it. To establish successor liability based on "mere continuation," as stated above, Plaintiff must first establish that the purported successor acquired the assets of the debtor. This case stated that to find successor liability it must be "establish[ed] that there is continuity in management, shareholders, personnel, physical location, assets and general business operation ***between selling and purchasing corporations*** following the asset acquisition" (emphasis added). *Id.* at 342. Since Votum did not acquire the assets, regardless of whether there is any management, shareholders, personnel, location, assets, or operation, in common, successor liability cannot not be found.

Clearly, since the cornerstone of finding successor liability, i.e., Votum acquired Tri-Coastal's assets, was not even pled because it didn't happen, the FIFTH CAUSE of action against Votum should be dismissed.

## II. THE FACTS PLAINTIFF RELY UPON DO NOT AS A MATTER OF LAW GIVE RISE TO A CLAIM FOR SUCCESSOR LIABILITY.

There are four recognized exceptions to the general rule of successor liability where: (i) the purchaser expressly or implicitly agrees to assume the other company's debts and obligations; (ii) the purchase is a de facto consolidation or merger; (iii) the purchaser is a mere continuation of the seller; or (iv) the transfer of assets is for the fraudulent purpose of escaping liability. *Portfolio Fin. Servicing Co. ex rel. Jacom Computer Servs.,* 334 F. Supp. 2d at 625. To that end, Plaintiff argues the following factors give rise to successor liability: (1) Timing of Events, (2) Employees, (3) Ownership, Management and Operations, Business Separation of Records, (4) Line of Business, and (5) Legal Counsel. As a fundamental matter, however, since there could not have been any intent on the part of the contracting parties, namely, IDB and Take Project, to effectuate a merger or consolidation of Tri-Coastal and Votum since Votum wasn't a party to the transaction, such matters are entirely irrelevant. See *Woodrick*, 306 N.J. Super. at 73 (quoting *Glynwed, Inc.*, 869 F.Supp. at 276).

Strictly for argument sake, however, as to "Timing of Events" and "Ownership and Management", Plaintiff suggests "[I]t cannot just be coincidence that Votum [ ] came into existence just prior to Tri-Coastal formally notifying its creditors that it was "no longer in business." To that end, Plaintiff ignores what Article 9 permits and the foreclosure documents, and concludes Tri-Coastal lied to its creditors that IDB took possession and ownership of all of

7

Tri-Coastal's assets. As documented above, Plaintiff is clearly misguided. Certainly, there is nothing in the law that prevents or otherwise creates successor liability for principles of a company that had their life's work building a 30-year old company ripped out from under them because of an unfortunate turn of events, namely, the tariffs placed on China and the COVID-19 pandemic, from trying to start over. Votum is a new and separate business that the principles of Tri-Coastal work for but not owned by them. Of course, there is a "coincidence" as to the timing of Votum and the foreclose by IDB since once it was learned they would be out of work, the principles sought other opportunities to feed their families.

As to "Employees", Votum did hire a few of the individuals who worked for Tri-Coastal, including family members of one of the principles. It should be noted that up until COVID-19, Tri-Coastal employed over 250 people. Once the pandemic hit, all but 20(+)/(-) were let go. Those 20 or so individuals soon thereafter also found themselves out of work with a need to feed their families. The fact that a few of them were able to find employment with Votum should not be used against this company. Thus, there is no "smoking gun" here, just an administrative error involving a $2,815 check. Because of that error, Plaintiff wants Votum to assume $40,000,000 of Tri-Coastal liabilities.

As to "Operations and Business Separation of Records", Votum operates out of a totally different office and has a distinct set of books and records. To suggest otherwise, is simply a fabrication. In fact, as the foreclosure documents disclose, all business records of Tri-Coastal relating to its suppliers, customers and assets, and "[a]ll computer and other equipment" were sold and transferred to Take Project. *See* Levine Dec. in Support, ¶4, Ex. B (Peaceful Possession Agreement)*,* Ex. A, Surrendered Collateral; *see also,* Levine Dec. in Support, ¶5, Ex. C (Bill of Sale), 4th Recital, Surrendered Collateral (the "Purchased Assets").

8

As to "Line of Business" there is nothing that prevents Votum from selling some of the same types of products that Tri-Coastal sold. Nothing in the law creates successor liability under those facts nor has Plaintiff cited a single case to suggest it does. In fact, there are a plethora of companies that sell like products.

Lastly, as to "Legal Counsel", this is again a non-starter. Whom Votum hires as its legal counsel is entirely irrelevant. There must be thousands of law firms that have worked with both a defunct company and also another company that has some of the same employees. There is nothing about that set of facts that even remotely suggests "inside dealing" as falsely alleged, or that otherwise creates successor liability.

### III. THE COURT HAS THE POWER TO TREAT A 12(b)(6) MOTION AS A MOTION FOR SUMMARY JUDGMENT.

It is also noteworthy that *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) do not suspend Fed.R.Civ.P 12(d)'s requirement that motions to dismiss relying on facts outside the pleadings be treated as motions for summary judgment. While Defendants may not introduce their own facts to support their theory of the case, they may challenge Plaintiff's theory by invoking "obvious" alternative explanations for the alleged facts that rest on a broader background of knowledge and understandings. In this case, such broader understanding is that the assets of Tri-Coastal were foreclosed upon by IDB, sold to a third-party, namely, Take Project, and Votum was not a party to the transaction (*see* discussion above).

## CONCLUSION

For the reasons stated above and in the papers in support of this motion, this action should be dismissed in all respects against Votum for failure of the Amended Complaint to state a claim on which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6).

Dated:  February 17, 2021          LAW FIRM OF TEDD S. LEVINE, LLC


By:  /s/Tedd S. Levine
  Tedd S. Levine, Esq.
  31 Dock Rd., Suite 162
  Remsenburg, NY 11960
  Tel:  (516) 770-3131
  email: lawofficesofteddslevine@ gmail.com

  *Attorneys for Defendant*
  *Votum Enterprises, LLC*