**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
-------------------------------------------------------X

A & E HARBOR TRANSPORT, INC.,                    **CIVIL ACTION**

                   Plaintiff,            Case No.: 2:20-cv-18509-SRC-CLW

          v.                            **MOTION RETURN DATE:**
                                         May 17, 2021

TRI-COASTAL DESIGN GROUP, INC.,
and VOTUM ENTERPRISES, LLC,

                   Defendants.

-------------------------------------------------------X

---

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS THE AMENDED COMPLAINT**
**AGAINST VOTUM ENTERPRISES LLC PURSUANT TO**
**FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

---

Dated:  March 29, 2021                         Tedd S. Levine, Esq.
                                               On the brief

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES                                                                  i

PRELIMINARY STATEMENT                                                                 1

RELEVANT FACTS                                                                        2

ARGUMENT                                                                             5

**I.**    PLAINTIFF FAILED TO STATE A CAUSE OF ACTION UPON
         WHICH RELIEF CAN BE GRANTED FOR A CLAIM OF
         SUCCESSOR LIABILITY ALLEGED IN THE FIFTH COUNT OF
         THE AMENDED COMPLAINT.                                                       5

         A.  Legal Standard.                                                          5

         B.  Plaintiff fails to identify the transaction that Votum and Tri-Coastal
             purportedly entered into where Votum purchased substantially all
             of Tri-Coastal's assets.                                                7

         C.  Plaintiff failed to plead plausible facts that Votum's and Tri-Coastal's
             management purportedly intended Votum would assume Tri-Coastal's
             obligations.                                                            13

         D.  None of the supposed connections between Votum and Tri-Coastal
             support successor liability since they all result from unwarranted
             inferences.                                                            16

**II.**   PLAINTIFF FAILED TO STATE A CAUSE OF ACTION UPON
         WHICH RELIEF CAN BE GRANTED FOR A CLAIM OF ALTER
         EGO LIABILITYALLEGED IN THE SIXTH COUNT OF THE
         AMENDED COMPLAINT.                                                          20

**III.**  THE COURT HAS THE POWER TO TREAT A 12(b)(6) MOTION
         AS A MOTION FOR SUMMARY JUDGMENT.                                           25

CONCLUSION                                                                           25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*40 Eisenhower Drive, LLC v. Karoon Capital Mkts.,*
2014 N.J. Super. Unpub. LEXIS 2860, at *10-11
(N.J. Super. Ct. App. Div. 2014)                          8

*160 W. Broadway Assocs., LP v. 1 Mem'l Drive, LLC,*
No. A-2454-18, 2021 WL 922443, at *7
(N.J. Super. Ct. App. Div. Mar. 11, 2021)                 7

*A & E Harbor Transp., Inc. v. Tri-Coastal Design Grp., Inc.,*
No. CV 20-18509 (SRC), 2021 WL 663747, at *2
(D.N.J. Feb. 19, 2021)                                    9, 13, 15

*Arcand v. Brother Int'l Corp.,*
673 F. Supp. 2d 282, 292 (D.N.J. 2009)                    11, 12, 16

*Ashcroft v. Iqbal,*
556 U.S. 662, 677-78 (2009)                               6, 14

*Associated Gen. Contractors of Cal. v. California State Council of Carpenters,*
459 U.S. 519, 526 (1983)                                  6

*Bank of Belton v. Bogar Farms, Inc.,*
154 S.W.3d 518, 520 (Mo. App. W.D. 2005)                  8

*Baraka v. McGreevey,*
481 F.3d 187, 195 (3d Cir. 2007)                          6, 16

*Bd. Of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.,*
296 F.3d 164, 171 (3d Cir.2002)                           20

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 550 (2007)                                  6, 7, 9, 25

*Bistrian v. Levi,*
696 F.3d 352, 365 (3d Cir. 2012)                          7

*Carreiro v. Rhodes Gill & Co.,*
68 F.3d 1443, 1448 (1st Cir. 1995)                        7

**Page(s)**

**Cases**

*Edwards v. Black Twig Mktg. & Commc'ns, LLC,*
418 S.W.3d 512, 520 (Mo. Ct. App. 2013)                    8

*Fowler v. UPMC Shadyside,*
578 F.3d 203, 210 (3d Cir. 2009)                           6

*Glynwed, Inc. v. Plastimatic, Inc.,*
869 F. Supp. 265, 275–76 (D.N.J. 1994)                     13

*Holzli v. DeLuca Enterprises,*
No. 11–6148, 2012 WL 983693, at *2 (D.N.J. Mar. 21, 2012)  22

*In re Asbestos Prods. Liab. Litig. (No. VI),*
822 F.3d 125, 133 n.7 (3d Cir. 2016)                       11, 12, 16

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.,*
184 F.3d 280, 287 (3d Cir. 1999)                           11, 12, 16

*Lefever v. K.P. Hovnanian Enterprises,*
160 N.J. 307, 310, 734 A.2d 290 (1999)                     9

*Luxliner P.L. Export v. RDI Luxliner,*
13 F.3d 69, 73 (3d Cir.1993)                               13

*Morrow v. Balaski,*
719 F.3d 160, 165 (3d Cir. 2013)                           6, 16

*Mueller v. Seaboard Comm. Corp.,*
73 A.2d 905, 908 (1950)                                    22

*My Bread Baking Co. v. Cumberland Farms, Inc. et al.,*
233 N.E.2d 748, (1968)                                     21

*Pastor Enterprises v. GKN Driveline N. Am., Inc.,*
No. CV1921872KMJBC, 2020 WL 5366286, at *3
(D.N.J. Sept. 8, 2020)                                     9

*Patel v. Pandya,*
No. 14–8127, 2015 WL 4523283, at *6 (D.N.J. July 27, 2015)  20

*Premier Cap., LLC v. KMZ, Inc.,*
464 Mass. 467, 984 N.E.2d 286, 292 (2013)                  8

|  | Page(s) |
|---|---|
| **Cases** | |
| *State v. Ventron Corp.,*<br>468 A.2d 150, 164 (N.J.1983) | 21 |
| *Stochastic Decisions, Inc. v. DiDomenico,*<br>565 A.2d 1133, (N.J.Super.Ct.App.Div.1989) | 21 |
| *The Mall at IV Group Props., LLC v. Roberts,*<br>No. 02–4692, 2005 WL 3338369, at *3 (D.N.J. Dec. 8, 2005) | 20, 22 |
| *Vision Pharma, LLC v. Sunrise Pharm., Inc.,*<br>No. 2:13-CV-04692, 2018 WL 3085213, at *4<br>(D.N.J. June 20, 2018) | 13 |
| *Warren Gen. Hosp. v. Amgen Inc.,*<br>643 F.3d 77, 84 (3d Cir. 2011) | 6 |

| **Statutes** | |
|---|---|
| Federal Rule of Civil Procedure Rule 8(a) | 8 |
| Federal Rule of Civil Procedure 12(b)(6) | 6, 25 |
| Federal Rule of Civil Procedure 12(d) | 25 |
| Uniform Commercial Code, Article 9 | 4, 10, 23 |

| **Other** | |
|---|---|
| 1 W. Fletcher, Cyclopedia of the Law of Private Corporations<br>§ 41.1 (Perm. ed.1974 rev.) | 22 |
| 15 William Meade Fletcher,<br>Fletcher Cyclopedia of the Law of Corporations § 7122 (2020) | 7 |

## PRELIMINARY STATEMENT

The two cornerstones of successor liability are (1) a transaction in which the purchaser acquired substantially all of the seller's assets, and (2) the purchaser's intent to assume the seller's obligations.

Struggling to connect the dots between Votum and Tri-Coastal, Plaintiff alleges a laundry list of unsupported conclusions and unwarranted inferences. Even more compelling is that nowhere in the Amended Complaint does Plaintiff identify the specific asset purchase and sale agreement that could possibly lead to a judicial determination that there was in reality a consolidation or a merger of Votum and Tri-Coastal.

The above said, the Amended Complaint actually contradicts any argument for successor liability by referencing the foreclosure by Tri-Coastal's secured lender and its sale of certain of Tri-Coastal's assets, not to Votum, but to an unrelated third-party. To find that a party has successor liability it is critical that the purported successor be the actual purchaser of the assets. Thus, as a result of Plaintiff's failure to first identify the asset sale and purchase arrangement entered into by Votum and Tri-Coastal and then admitting Tri-Coastal's assets were actually sold to a different company, its claim that there was a "an actual or de facto consolidation or merger" is nothing other than an unsupported legal conclusion couched as a factual allegation. It is this gap the Court mandated that Plaintiff fill which it has again failed to do.

It follows that having been unsuccessful at identifying the requisite agreement entered into by Votum and Tri-Coastal, Plaintiff also neglects to plead any plausible facts to demonstrate Votum's intent to assume Tri-Coastal's liabilities. Without such intent, again, successor liability cannot be found.

Lastly, Plaintiff appears to be asserting in the SIXTH COUNT a cause of action for alter ego liability. Nonetheless, as implausible as the FIFTH COUNT is, this claim is even more deficient.  Here, Plaintiff fails to plead the called for parent/subsidiary relationship between Votum and Tri-Coastal, and pleads facts that negate any intermingling of activity.  As to the second point, Plaintiff acknowledges Tri-Coastal hasn't been operational or otherwise hasn't had any activity since August, 2020 and Votum didn't commence doing business until September, 2020, but somehow concludes they operated in a combined manner.

Again, the present Amended Complaint makes no sense.  In conjunction with applicable case law, these matters are discussed more fully below.

## RELEVANT FACTS

On or about April 27, 2007, defendant Tri-Coastal Design Group Inc. and all affiliated companies ("Tri-Coastal"), entered into a loan and security agreement with Israel Discount Bank of New York ("IDB") to finance its operations.  To secure such financing, Tri-Coastal granted IDB Uniform Commercial Code ("UCC") liens on all their business assets; IDB perfected such liens by filing UCC Financing Statements.  The UCC filings and the loan and security agreement referenced in those filings, are a ***public record***.  *See* Levine Dec., ¶3, Ex. B (UCC Filings).

Tri-Coastal was formed and in business since 1990.  A ***public record***.

On or about November 30, 2010, Tri-Coastal entered into a restated and amended loan and security agreement with IDB to continue the financing of such entities.  The UCC liens previously granted to IDB were extended.  A ***public record***.

On or about August 24, 2017, Tri-Coastal entered into a restated and amended loan and security agreement with Israel Discount Bank of New York ("IDB") to continue the financing of

such entities. *See* Levine Dec., ¶2, Ex. A (Loan Agreement).  The UCC liens previously granted to IDB were extended. *See* Levine Dec., ¶3, Ex. B; also, a ***public record***.

Through the end of calendar year 2017, Tri-Coastal was substantially profitable.  *See* Levine Dec., ¶4.

Commencing 2018, Tri-Coastal began experiencing operational losses due to production problems with certain of its suppliers from China and the imposition of tariffs by the United States government on Chinese imports. A ***public record***.  The tariff's caused Tri-Coastal to lose significant sales margin, experience cash flow problems, and incur substantial demurrage costs. These financial issues continued into 2020 causing Tri-Coastal to default under its loan and security agreement with IDB and to become significantly in arrears with its unsecured suppliers and landlords.

Commencing 2019, Tri-Coastal commenced an aggressive campaign to find investors and an alternative lender.  With regard to such an effort, Tri-Coastal retained consultants and investment bankers; a business plan was created that included significant cost reductions and debt relief from unsecured creditors.  In view of such effort, IDB was willing to forbear for a certain period of time from foreclosing on its UCC liens.

In or about February 2020, the Covid 19 Pandemic began impacting the United States.  The Pandemic caused nationwide retailers to close and international supply chains for goods to tighten. A ***public record***.  These events caused Tri-Coastal the final blow in their chances to turnaround their business.  Nonetheless, Tri-Coastal continued to aggressively pursue alternative financing and potential investors.

In or about March, 2020, IDB stopped virtually all lending to Tri-Coastal under the Loan Agreement.

On or about August 24, 2020, IDB and Tri-Coastal entered into an agreement whereby Tri-Coastal surrendered, delivered, granted, and turned over to IDB, as secured party, peaceful possession of all of their assets pursuant to Article 9 of the UCC.[1]  *See* Amend Comp., FIFTH COUNT, ¶31; *see also,* Levine Dec., ¶5, Ex. C (Peaceful Possession Agreement).  IDB had the unequivocal right to take ownership of all such assets due to its UCC liens and Tri-Coastal's multiple defaults under the IDB restated loan and security agreement.  The unpaid loan amount owed to IDB at the time of the foreclosure was $10,164,401.49.  *Id.*  On that same day, IDB sold certain of the assets it foreclosed on to a third-party investor group located in Italy, namely Take Project Srl ("Take Project").  *See* Levine Dec., ¶6, Ex. D (Bill of Sale).  The sale price of those assets was $1,787,413.35, which was applied against the amount Tri-Coastal owed IDB under the Loan Agreement.  Tri-Coastal owes approximately $40,000,000 to its unsecured creditors (which includes Plaintiff).

Contemporaneous with the signing of the Peaceful  Possession Agreement and the Bill of Sale, IDB, the borrowers, and the guarantors, entered into a letter agreement which is referenced in the Peaceful Possession Agreement.  *See* Levine Dec., ¶7, Ex. E, ¶2(e) (Letter Agreement).  The Letter Agreement merely states, what has already been established by the UCC filings, that "Lender's liens on and security interest in the Excluded Assets … remain in full force and effect …".  *Id.,* at ¶1.  Thus, all US Customs reclamations, the $1,200,000 of cash collateral held by IDB to secure a letter of credit to US Customs, and all accounts receivables, etc., "shall be applied by Lender to reduce Borrowers' Obligations under the Loan Agreement." See *Id.,* at ¶¶3 and 4.

---

[1] Litigation would have been the alternative to entering into a Peaceful Possession Agreement which would have resulted in a substantial dissipation of Tri-Coastal' assets and likely the same outcome.

The individual shareholders of Tri-Coastal are Michael Mastrangelo ("Mastrangelo"), who owns 60% and served as Tri-Coastal's President; Marvin Stutz ("Stutz'), who owns 40% and served as Tri-Coastal's Vice President. *See* Amend Comp., FIFTH COUNT, ¶32.

Neither Mastrangelo nor Stutz have any ownership interest in Take Project. *See* Levine Dec., ¶8, Ex. F (Take Project formation document); a ***public record***.

Neither Michael Mastrangelo nor Marvin Stutz have received any compensation or distributions of any kind from Tri-Coastal since March, 2020.  Attempting to keep the business from failing, during 2019 and 2020, both Michael Mastrangelo and Marvin Stutz loaned and contributed over $10,000,000 to the capital of Tri-Coastal.  Such amount remains unpaid and is part of Tri-Coastal's unsecured debt.

On July 30, 2020. Votum was formed.  *See* Amend Comp., FIFTH COUNT, ¶10; *see also,* Votum formation document attached to Amend. Comp.  At the time of formation Tedd S. Levine was the sole member.  Amend Comp., FIFTH COUNT, ¶17.  Since that date, he is no longer a member and Votum is owned by two irrevocable trusts.  Votum didn't commence doing business until September, 2020.  *See* Amend Comp., FIFTH COUNT, ¶33; *see also,* Levine Dec., ¶¶9 and 10, Ex. G (Initial Votum Operating Agreement) and Ex. H (Current Votum Operating Agreement).

## ARGUMENT

I.  **PLAINTIFF FAILED TO STATE A CAUSE OF ACTION UPON WHICH RELIEF CAN BE GRANTED FOR A CLAIM OF SUCCESSOR LIABILITY ALLEGED IN THE FIFTH COUNT OF THE AMENDED COMPLAINT.**

A.  <u>**Legal Standard**</u>.

The Supreme Court holds that the pleading standard of Rule 8(a) requires that the complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to

relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). While the complaint may be short and plain, it must also state facts that at least raise a right above a speculative level. *Twombly,* 550 U.S. at 555.

Federal Rule of Civil Procedure 12(b)(6) provides that a cause of action shall be dismissed if a complaint fails "to state a claim upon which relief can be granted."  "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.' " *Twombly,* 550 U.S. at  570.   "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc*., 643 F.3d 77, 84 (3d Cir. 2011) (citing  *Twombly*, 550 U.S. at 555–56). Although a court must accept the fact allegations in a complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Additionally, a court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Pleading standards have shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  The Third Circuit requires a three-step analysis to meet the plausibility standard mandated by *Twombly* and *Iqbal*. First, the court should "outline the elements a plaintiff must plead to a state a claim for relief."

*Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Next, the court should "peel away" legal conclusions that are not entitled to the assumption of truth. *Id.*; see also *Iqbal*, 556 U.S. at 678-79 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). It is well-established that a proper complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  The court should assume the veracity of all well-pled factual allegations, and then "determine whether they plausibly give rise to an entitlement to relief." *Bistrian*, 696 F.3d at 365 (*quoting* Iqbal, 556 U.S. at 679). A claim is facially plausible when there is sufficient factual content to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The third step of the analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### B. Plaintiff fails to identify the transaction that Votum and Tri-Coastal purportedly entered into where Votum purchased substantially all of Tri-Coastal's assets.

"Most jurisdictions [including New Jersey] hold that a prerequisite to the imposition of liability against a corporation under any of the exceptions to the nonliability of successors *is a transfer or sale of all, or substantially all, the assets* of the predecessor to the successor. 15 William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations § 7122 (2020) (emphasis added); see *160 W. Broadway Assocs., LP v. 1 Mem'l Drive, LLC,* No. A-2454-18, 2021 WL 922443, at *7 (N.J. Super. Ct. App. Div. Mar. 11, 2021) citing *Carreiro v. Rhodes Gill & Co.*, 68 F.3d 1443, 1448 (1st Cir. 1995) ("surveying treatises and case law and finding no mention nor even any hint that the 'mere continuation' or 'de facto merger' [exceptions] might apply in the absence of an asset transfer.").  As noted in *160 W. Broadway Assocs.,* "[a] sampling of authority from other jurisdictions only supports our conclusion that successor liability is preconditioned on

a sale or transfer of substantial assets from the predecessor entity.  As the Massachusetts Supreme

Judicial Court stated":

> In order for one corporation to be deemed a successor corporation in the first place, it must be a successor to all, or substantially all, of another corporation's assets. In other words, a transfer of assets is an essential prerequisite to successor liability. Our decisions addressing successor liability have recognized consistently that successor liability depends on a transfer of all, or substantially all, assets from predecessor to successor.  *Premier Cap., LLC v. KMZ, Inc.,* 464 Mass. 467, 984 N.E.2d 286, 292 (2013).

> *160 W. Broadway Assocs.* states further, "[i]n *Edwards v. Black Twig Mktg. & Commc'ns,*

*LLC,* the court rejected the argument that a sale of all or substantially all of a corporation's assets

was unnecessary for finding successor liability. 418 S.W.3d 512, 520 (Mo. Ct. App. 2013).  The

court added":

> We ... hold that a transfer of all or substantially all of the assets of one corporation to another is a prerequisite to corporate successor liability under any of the four exceptions to the general rule of nonliability .... [O]ur cases neither mention nor even hint that the four exceptions might apply in the absence of a transfer of all or substantially all assets. Our holding is also a logical extension of the rule that "[o]rdinarily, the separate legal identities of two corporations will be protected."

*Id.* at 521 (quoting *Bank of Belton v. Bogar Farms, Inc.,* 154 S.W.3d 518, 520 (Mo. App. W.D.

2005)).

With regard to the motion to dismiss the first Amended Complaint in this action, this Court

likewise reasoned:

> Plaintiff relies on *40 Eisenhower*[2], but the opposition brief fails to demonstrate that the Amended Complaint pleads the elements of successor liability as stated in that case. As Votum notes in reply, the quoted section from 40 *Eisenhower* describes an inquiry to be applied to a "particular transaction," but the Amended Complaint does not identify a particular transaction, nor does the opposition brief. 2014 N.J. Super.

---

[2] *40 Eisenhower Drive, LLC v. Karoon Capital Mkts.,* 2014 N.J. Super. Unpub. LEXIS 2860, at *10-11 (N.J. Super. Ct. App. Div. 2014)

Unpub. LEXIS 2860, at *10. 40 *Eisenhower* concludes: "***the crucial inquiry is whether there was an intent on the part of the contracting parties to effectuate a merger or consolidation rather than a sale of assets***." Id. at *11. Plaintiff's opposition brief makes no argument that the Amended Complaint pleads facts that ***make plausible the inference that there was such a contracting event*** or such an intent shared by Tri-Coastal and Votum management. (Emphasis Added.) *A & E Harbor Transp., Inc. v. Tri-Coastal Design Grp., Inc.*, No. CV 20-18509 (SRC), 2021 WL 663747, at *2 (D.N.J. Feb. 19, 2021).

The Court concludes that the Amended Complaint fails to plead sufficient facts to make plausible Count Five, for successor liability. …

The New Jersey Supreme Court explained in *Lefever v. K.P. Hovnanian Enterprises*, 160 N.J. 307, 310, 734 A.2d 290 (1999), that the general rule of corporate-successor liability is that *when a company sells its assets to another company*, the acquiring company is not liable for the debts and liabilities of the selling company simply because it has succeeded to the ownership of the assets of the seller. Traditionally, there have been only four exceptions: (1) the successor expressly or impliedly assumes the predecessor's liabilities; (2) there is an actual or de facto consolidation or merger of the seller and the purchaser; (3) the purchasing company is a mere continuation of the seller; or (4) the transaction is entered into fraudulently to escape liability. See also, *Pastor Enterprises v. GKN Driveline N. Am., Inc.*, No. CV1921872KMJBC, 2020 WL 5366286, at *3 (D.N.J. Sept. 8, 2020). To that end, Plaintiff alleges a formulaic recitation of the elements of such a cause of action as follows (see *Twombly*, 550 U.S. at 555):

- o The Votum expressly or impliedly assumed the liabilities of Votum. (*See* Amend. Comp., FIFTH COUNT, ¶2)

- o There is an actual or de facto consolidation or merger of both companies. (*See* Amend. Comp., FIFTH COUNT, ¶3)

- o Votum is a mere continuation of the [Tri-Coastal]. (*See* Amend. Comp., FIFTH COUNT, ¶4)

o   The transaction was entered into fraudulently to escape liability.  (*See* Amend.

Comp., FIFTH COUNT, ¶5)

Thus, Plaintiff's sole purported attempt at pleading a "particular transaction" or "contracting event" is to jump to an allegation "[t]here is an actual or de facto consolidation or merger of both companies." (Amend. Comp., FIFTH COUNT, ¶3).  While Plaintiff attempts to catalogue what purports to be supporting facts, the Amended Complaint stops short of identifying that an actual transaction occurred whereby Tri-Coastal sold Votum substantially all of Tri-Coastal's assets.   The Amended Complaint infers a consolidation or merger occurred sometime after Votum was formed and Tri-Coastal went out of business, but the only transaction it references is IDB's foreclosure pursuant to Article 9 of the UCC.  (Amend. Comp., FIFTH COUNT, ¶¶8-10). To that end, Plaintiff points to the execution of the Peaceful Possession Agreement (Amend. Comp., FIFTH COUNT, ¶31), which confirms IDB foreclosed on its assets, and openly acknowledges there was a "voluntary surrender of some of Tri-Coastal's assets to IDB (Amend. Comp., FIFTH COUNT, ¶36).[3]  Plaintiff doesn't identify any transaction beyond the foreclosure likely because it knows that Tri-Coastal's assets were actually sold to Take Project (not Votum). *See* Levine Dec., ¶5, Ex. C (Bill of Sale).   Consequently, the present Amended Complaint simply

---

[3] While Plaintiff references the Peaceful Possession Agreement which lists the "Surrendered Collateral", it mistakenly infers the "Excluded Assets" were "retained by Tri-Coastal".  Amend. Comp., FIFTH COUNT, ¶36.   The Letter Agreement which is referenced in the Peaceful Possession Agreement (Amend. Comp., FIFTH COUNT, ¶31) and provided to Plaintiff months ago, makes it clear that such remaining assets were transferred to IDB and liquidated with the proceeds being applied against its unpaid loan.

makes a nebulous conclusion that a merger or consolidation ensued[4].   The Amended Complaint states:

o   Votum made that representation on multiple occasions.  On September 18, 2020 Tri-Coastal notified all Tri-Coastal's creditors, in writing, that IDB "foreclosed on its perfected security interest and took ownership of all of all of Tri-Coastal Designs assets." (Amend. Comp., FIFTH COUNT, ¶12)

o   [Votum's counsel advised Plaintiff] that the assets of Tri-Coastal Design Group, Inc's asset were "foreclosed on" on "in the beginning of September, 2020." ." (Amend. Comp., FIFTH COUNT, ¶13)

o   … on August 24, 2021, Tri-Coastal … executed the Peaceful Possession of Collateral agreement. (Amend. Comp., FIFTH COUNT, ¶31).

The Peaceful Possession Agreement[5] makes the following clear:

o   Tri-Coastal defaulted under the Restated and Amended Loan Security Agreement. *See* Levine Dec., ¶5, Ex. C (Peaceful Possession Agreement) referencing the IDB Loan Agreement; *see also,* Levine Dec., ¶2, Ex. A (the IDB Loan Agreement).

o   As of the close of business on August 24, 2020, Debtors are indebted to [IDB] for all obligations, liabilities and indebtedness arising under or in connection with the

---

[4] In the context of the allegations, to conclude that a merger or consolidation occurred requires a judicial determination stemming from a transaction in which a purchaser (the accused successor) purchases substantially all of the assets of the seller.  See *Glynwed, Inc*., 869 F.Supp at 275-276. Here, no such underlying transaction was pled.

[5] While the Peaceful Possession Agreement is not attached to the Amended Complaint, this document is referenced therein. *See* Levine Dec., ¶5, Ex. C (Peaceful Possession Agreement). Moreover, contemporaneous with the signing of the Peaceful Possession Agreement and the Bill of Sale, IDB and the borrowers entered into the Letter Agreement which is referenced in the Peaceful Possession Agreement; the Letter Agreement references the Bill of Sale.  *See* Levine Dec., ¶7, Ex. E, ¶2(e) (Letter Agreement); *see* Levine Dec., ¶6, Ex. D, ¶(h) (Bill of Sale). When deciding a motion to dismiss, a court typically does not consider matters outside the pleadings. However, a court may consider documents that are "integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999); *see In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016); *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 292 (D.N.J. 2009) (court may consider documents referenced in the complaint).

Loan Documents (the "<u>Obligations</u>") in the aggregate principal amount of not less than $10,164,401.49 …. *See* Levine Dec., ¶5, Ex. C, ¶1(a) (Peaceful Possession Agreement).

o   As collateral security for the prompt payment and performance of all Obligations, Secured Party has, and shall continue to have, valid, enforceable and perfected first liens upon and security interests in **all** assets and properties of Debtor in which Secured Party was granted a lien or security interest pursuant to the Loan Documents **and the proceeds and products of all of the foregoing, including, without limitation, the assets set forth on Exhibit A[6] attached hereto** (emphasis added). *See* Levine Dec., ¶5, Ex. C, ¶1(b) (Peaceful Possession Agreement); *see also,* Levine Dec., ¶3, Ex. B (UCC Filings).[7]

o   Debtors … acknowledge, confirm and agree that various Events of Default have occurred and are continuing under the Loan Documents …. *See* Levine Dec., ¶5, Ex. C, ¶1(c)(i) (Peaceful Possession Agreement).

o   Each Debtor hereby surrenders, delivers, grants and turns over to Secured Party peaceful possession of the assets set forth on <u>Exhibit A</u> attached hereto (the "<u>Surrendered Collateral</u>"), wherever located, and the products and proceeds thereof. … *See* Levine Dec., ¶5, Ex. C, ¶2(a) (Peaceful Possession Agreement).

The above said, the Court should take judicial notice of the Peaceful Possession Agreement referenced in the Amended Complaint (Amend. Comp., FIFTH COUNT, ¶31), the Letter Agreement, which is referenced in the Peaceful Possession Agreement, and the Bill of Sale, which is referenced in the Letter Agreement, all of which are "integral to or explicitly relied upon in the [Amended Complaint]" and are undisputedly authentic documents that Votum attaches as exhibits to this motion to dismiss since Plaintiff's claims are based on such documents. See *In re Rockefeller Ctr. Props*, 184 F.3d at 287; *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d at 133 n.7; *Arcand*, 673 F. Supp. 2d at 292.  To that end, such documents confirm (1) a foreclosure of

---

[6] Exhibit A includes both the "Surrendered Collateral" and the "Excluded Assets".   The Surrendered Collateral was sold to Take Project Srl (*see* Levine Dec., ¶6, Ex. D (Bill of Sale), and the Excluded Assets were liquidated by IDB and the proceeds applied against its unpaid loan (*see* Levine Dec., ¶7, Ex. E (Letter Agreement).

[7] A public record.

Tri-Coastal's assets by IDB occurred on August 24, 2020, (2) IDB obtained ownership and possession of <u>all</u> of Tri-Coastal's assets, (3) IDB sold the Surrendered Collateral, as defined in the Peaceful Possession Agreement, to Take Project, and (4) IDB retained ownership and liquidated the Excluded Assets, as defined in the Peaceful Possession Agreement, and applied the proceeds against its unpaid loan.  Thus, the Amended Complaint, which references the Peaceful Possession Agreement, actually confirms that Votum never purchased Tri-Coastal's assets.

For the reasons stated, the Court should dismiss the FIFTH COUNT.

C. **Plaintiff failed to plead plausible facts that Votum's and Tri-Coastal's management purportedly intended Votum would assume Tri-Coastal's obligations.**

This Court ruled that an "*intent shared by Tri-Coastal and Votum management*" that Votum assumed Tri-Coastal's obligations needs to be pled. See *A & E Harbor Transp., Inc. v. Tri-Coastal Design Grp., Inc.*, No. CV 20-18509 (SRC), 2021 WL 663747, at *2 (D.N.J. Feb. 19, 2021).   Likewise, *Glynwed, Inc. v. Plastimatic, Inc.*, 869 F. Supp. 265, 275–76 (D.N.J. 1994) notes that the crucial inquiry is whether there was an "intent on the part of the contracting parties to effectuate a merger or consolidation rather than a sale of assets." Citing *Luxliner P.L. Export v. RDI Luxliner,* 13 F.3d 69, 73 (3d Cir.1993); *Vision Pharma, LLC v. Sunrise Pharm., Inc.,* No. 2:13-CV-04692, 2018 WL 3085213, at *4 (D.N.J. June 20, 2018).

With regard to the question as to whether *both* Votum and Tri-Coastal intended that Votum would assume all of Tri-Coastal's obligations, Plaintiff has not only failed to plead that there was a sale of assets by Tri-Coastal to Votum (see discussion above) but also Plaintiff didn't plead there was any intent on Votum's part to accept Tri-Coastal's debt.  The FIFTH COUNT of the Amended Complaint simply states, "*Tri-Coastal* intended that Votum be a mere continuation of Tri-Coastal." (Emphasis added.) (Amend. Comp., FIFTH COUNT, ¶24).    This is Plaintiff's sole statement

referencing either party's intent and it plainly points to only Tri-Coastal's intent and not to Votum's intent, which is the critical party here.

It is also noteworthy that Plaintiff pleads that Votum paid a $2,815 invoice owed by Tri-Coastal and that Plaintiff implies there is some further meaning to this event. *See* Amend. Comp., FIFTH COUNT, ¶¶21-22. Nonetheless, to suggest this can be viewed that Votum assumed all the obligations of Tri-Coastal, including the $10,164,401.49 due to IDB and the $40,000,000.00 owed to unsecured creditors is farfetched at best. *See* Levine Dec., ¶5, Ex. C, ¶1(a) (Peaceful Possession Agreement). Plaintiff, in fact, admits this is the only payment it knows of where Votum paid a Tri-Coastal invoice. The Amended Complaint states:

> In spite of same, Votum still paid at least one known debt of Tri-Coastal to the plaintiff. It is unknown at this time how many other debts were similarly paid. (Amend. Comp., FIFTH COUNT, ¶24).

The inference Plaintiff makes from Votum having paid a single invoice for an inconsequential amount that "… Votum paid other debts of Tri-Coastal because both entities were substantially the same (*see* Amend. Comp., FIFTH COUNT, ¶26), is entirely unsubstantiated. Assessing the plausibility of a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. One particularly common use of "judicial experience and common sense" is to justify courts' imagining obvious, alternative, lawful explanations for the alleged conduct that it considers at least as plausible as the explanation being alleged. Where such alternative explanations exist, it is less likely that the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While Defendants may not introduce their own facts to support their theory of the case, they may challenge Plaintiff's theory by invoking "obvious" alternative

14

explanations for the alleged facts that rest on a broader background of knowledge and understandings.   To that end, Plaintiff admits it directed the invoice to three employees who once worked for Tri-Coastal and now work for Votum using their only known email addresses.  (*See* Amend. Comp., FIFTH COUNT, ¶21.)   The identified payment amounts to .0047% of Tri-Coastal's total debt.   Clearly, such an insignificant payment does not translate into any "intent shared by Tri-Coastal and Votum management" that Votum agreed to assume all of Tri-Coastal's obligations.  See *A & E Harbor Transp., Inc. v. Tri-Coastal Design Grp., Inc.*, No. CV 20-18509 (SRC), 2021 WL 663747, at *2 (D.N.J. Feb. 19, 2021).   Thus, the more feasible explanation for this payment is that it was a clerical error.

Equally disjointed is Plaintiff's conclusion that "if Votum and Tri-Coastal indeed had different software, books, records, and *banks* then it would have [been] impossible for Votum to have paid the debt of Tri-Coastal". *See* Amend. Comp., FIFTH COUNT, ¶27.  That said, the Amended Complaint actually acknowledges "Votum's bank account at Investors Bank" (Amend. Comp., FIFTH COUNT, ¶22 and attach.), and Tri-Coastal's bank being IDB (Amend. Comp., FIFTH COUNT, ¶¶13, 14, 16, and 31).   Similarly, it is nonsensical for Plaintiff to conclude that incorrectly paying an invoice translates into Votum and Tri-Coastal using the same software, especially when Plaintiff admits the check used to pay the invoice was "handwrite[n]".  *See* Amend. Comp., FIFTH COUNT, ¶25 and attach.  Hence, it is beyond obvious that such allegations are nothing other than "unsupported conclusions and unwarranted inferences." See *Morrow*, 719 F.3d at 165 (quoting *Baraka*, 481 F.3d at 195).   Again, the truth is that the payment by Votum at issue was nothing other than a clerical mistake.

**D. None of the supposed connections between Votum and Tri-Coastal support successor liability since they all result from unwarranted inferences.**

Although a court must accept the fact allegations in a complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." Morrow, 719 F.3d at 165 (quoting *Baraka*, 481 F.3d at 195). In addition, when deciding a motion to dismiss, a court typically does not consider matters outside the pleadings. However, a court may consider documents that are "integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999); *see In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016); *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 292 (D.N.J. 2009) (court may consider documents referenced in the complaint). Moreover, the Third Circuit allows courts to consider matters of public record when ruling on a motion to dismiss. *In re Rockefeller Center Properties, Inc. Sec. Litig.*, 184 F.3d at 292–93.

In addition to what amounts to nothing other than numerous unsupported conclusions belied by either other facts alleged in the Amended Complaint or facts that are a matter of public record (*see* Amend. Comp., FIFTH COUNT, ¶¶2-4, 7-9, 18, 22, 24, 27, 29, and 35), below is a recap of the plethora of allegations in the Amended Complaint that do not warrant an acceptance of the truth:

| Allegation | Unwarranted Inference | Facts which Judicial Notice should be taken |
|---|---|---|
| There is an actual or de facto consolidation or merger of both companies. Amend. Comp., FIFTH COUNT, ¶3 | Successor liability | Votum never purchased the assets of Tri-Coastal. (See discussion above.) |

| | | |
|---|---|---|
| The transaction was entered into fraudulently to escape liability. FIFTH COUNT, ¶5 | Successor liability | The only transaction identified in the Amended Complaint is IDB's foreclosure upon Tri-Coastal's assets. For the Court to determine a consolidation or merger occurred it first requires a finding that Votum purchased substantially all of Tri-Coastal's assets from Tri-Coastal. This never occurred. (See discussion above.) |
| There is a continuity of … assets… Amend. Comp., FIFTH COUNT, ¶6 | A consolidation or merger occurred; or Votum's mere continuation of Tri-Coastal | On August 24, 2020, all of Tri-Coastal's assets were foreclosed upon by IDB and either sold to Take Project or liquidated and the proceeds applied against the unpaid loan. *See,* Levine Dec., ¶5, Ex. C (Peaceful Possession Agreement); ¶6, Ex. D (Bill of Sale); and ¶7, Ex. E (Letter Agreement) |
| There is a continuity of … physical location … and general business operations. Amend. Comp., FIFTH COUNT, ¶6 | A consolidation or merger occurred; or Votum's mere continuation of Tri-Coastal | The Amended Complaint attaches documents that show the two companies have distinct locations. Votum's location is 1 Cardinal Drive, Little Falls, NJ. Tri-Coastal's location was 40 Harry Shupe Blvd., Wharton, NJ. (*See* attach. to Amend. Comp.). (See also, discussion above.) |
| Tri-Coastal attempted to defraud its creditors by advising them this it was out of business with no assets. Amend. Comp., FIFTH COUNT, ¶11 | Tri-Coastal committed a fraud. | On August 24, 2020, all of Tri-Coastal's assets were foreclosed upon by IDB and either sold to Take Project or liquidated and the proceeds applied against the unpaid loan. *See,* Levine Dec., ¶5, Ex. C (Peaceful Possession Agreement); ¶6, Ex. D (Bill of Sale); and ¶7, Ex. E (Letter Agreement) |
| The letter further represents that "notification pursuant to | Tri-Coastal's counsel misrepresented that proper | UCC §9-611 is entitled "Notification Before Disposition |

| | | |
|---|---|---|
| Section 9-611 of the UCC was timely sent" the plaintiff did not receive any such notice. Further, the plaintiff has been in touch with at least one other creditor who confirms that it did not receive any notices either. Amend. Comp., FIFTH COUNT, ¶¶14 and 15 | notice was sent pursuant to UCC §9-611. | of Collateral". Since Plaintiff was not the debtor, a secondary obligor, nor did it have a secured interest in the collateral, there was no requirement to notify Plaintiff. |
| In fact, Tri-Coastal only transferred some of its assets to IDB but retained, and continues to retain, other valuable assets. Amend. Comp., FIFTH COUNT, ¶16. | Tri-Coastal's counsel misrepresented that IDB foreclosed on all of Tri-Coastal's assets. | On August 24, 2020, all of Tri-Coastal's assets were foreclosed upon by IDB and either sold to Take Project or liquidated and the proceeds applied against the unpaid loan.   *See,* Levine Dec., ¶5, Ex. C (Peaceful Possession Agreement); ¶6, Ex. D (Bill of Sale); and ¶7, Ex. E (Letter Agreement) |
| The filed Certificate of Formation of Votum Enterprises, LLC shows that the Member/Manager is Tedd S. Levine, the same person who represented Tri-Coastal Design Group, Inc. Amend. Comp., FIFTH COUNT, ¶17. | Votum's counsel has an ownership interest in Votum. | Public record and the Operating Agreement show that Votum is presently owned by two separate *irrevocable* trusts which have no relationship to Votum's counsel. *See,* Amend. Comp., FIFTH COUNT, ¶33; *see also,* Levine Dec., ¶10, Ex. H (Current Operating Agreement) |
| Tri-Coastal represented that it was out of business that representation was a falsehood. Amend. Comp., FIFTH COUNT, ¶19. | Tri-Coastal's counsel misrepresented that IDB foreclosed on all of Tri-Coastal's assets and Tri-Coastal is out of business. | On August 24, 2020, all of Tri-Coastal's assets were foreclosed upon by IDB and either sold to Take Project or liquidated and the proceeds applied against the unpaid loan.   *See,* Levine Dec., ¶5, Ex. C (Peaceful Possession Agreement); ¶6, Ex. D (Bill of Sale); and ¶7, Ex. E (Letter Agreement) |
| Tri-Coastal has also transferred its internet presence to Votum. A link on Walmart.com for Tri-Coastal | Votum alone is selling Tri-Coastal product having stepped into Tri-Coastal's shoes. | Votum along with a multitude of unrelated companies are selling Tri-Coastal closeout products through Walmart's online store. |

| | | |
|---|---|---|
| products directs the user to the Votum page. Thus, potential purchasers of Tri-Coastal products are directed to purchase products directly from Votum … Amend. Comp., FIFTH COUNT, ¶20. | | This information is readily available to the public.[8] |
| The owner of Tri-Coastal Design Group, Inc. and Votum Enterprises, LLC are the same, or are of the same | Attempts to show common ownership. | Both the Operating Agreement referenced in Amend. Comp., FIFTH COUNT, ¶33 (*see* Levine Dec., ¶¶9 and 10, Ex. G (Initial |

---

[8] As a matter of public record, by way of example, the following should be noted:

Being sold by Lett's Place, LLC

https://www.walmart.com/ip/Tri-Coastal-Design-Cute-White-Cat-Mug-20-Oz-Ceramic-Cat-Shaped-Mug-for-Coffee-or-Tea/256360470 -

Being sold by NBO LLC

https://www.walmart.com/ip/Tri-Coastal-Design-7-ounce-Jar-Candle-Vanilla-Frosting/928451591
https://www.walmart.com/ip/Tri-Coastal-Design-Cactus-Ceramic-Mug/245808365
https://www.walmart.com/ip/Tri-Coastal-Design-Coffee-Mug-But-First-Coffee/380028262
https://www.walmart.com/ip/Tri-Coastal-Design-16-oz-Plastic-Drinking-Mug-w-Straw/615507150
https://www.walmart.com/ip/Tri-Coastal-Design-Multi-Use-Flexible-Kitchen-Cutting-Mat-Set-of-3/705914516
https://www.walmart.com/ip/Tri-Coastal-Design-Multi-Use-Flexible-Kitchen-Cutting-Mat-Set-of-3/729049930
https://www.walmart.com/ip/Tri-Coastal-11-oz-Orange-Pumpkin-Harvest-Jar-Candle-One-Size-White-orange/815020432
https://www.walmart.com/ip/Tri-Coastal-Design-Shine-Bright-Ultra-Plush-Socks-Candle/998579261

Being sold by BeautyExpress Sales LLC

https://www.walmart.com/ip/Tri-Coastal-Design-Scented-Bath-Crumbles-Mango-Peach-10-5-Oz/871324569
https://www.walmart.com/ip/Tri-Coastal-Design-Scented-Bath-Crumbles-Citrus-Mint-10-5-Oz/930357630
https://www.walmart.com/ip/Tri-Coastal-Design-Chill-Out-Citrus-Mint-Bath-Soaks-6-35-Oz/155797976
https://www.walmart.com/ip/Tri-Coastal-Design-Fizz-Squad-Mango-Peach-Bath-Soaks-6-35-Oz/571932430

Being sold by Deal Genius

https://www.walmart.com/search?page=1&ps=40&query=tri+coastal+design&redirect=false
https://www.walmart.com/ip/Tri-Coastal-Design-Ty-Beanie-Boos-Kids-Spiral-Notebook/921990992
https://www.walmart.com/ip/Tri-Coastal-Design-Kids-Piggy-Bank-Coin-Savings-Money-Bank-Toy-With-Latch-For-Girls-Or-Boys/108561927
https://www.walmart.com/ip/Tri-Coastal-Design-4-Pack-Kids-Journals-For-Girls-Boys-With-Pen-Party-Favors-For-Kids-Bulk-Spiral-Notebook/516373380

Being sold by AMI Ventures Inc

https://www.walmart.com/search?page=1&ps=40&query=tri+coastal+design&redirect=false
https://www.walmart.com/ip/Tri-coastal-Design-Finding-Dory-Glitter-Coloring-Sheet-with-Markers-11-x-15-28-cm-x-38-cm/787374919

| | | |
|---|---|---|
| family, and have a common ownership interest. | | Votum Operating Agreement) and Ex. H (Current Votum Operating Agreement), and public records, show Votum is owed 50% by the Prego Trust and 50% by the Cocobu Trust (formally known as the Largesse Trust) not Michael Mastrangelo and Marvin Stutz. |

Thus, even if the Court should conclude there is a plausible allegation of a requisite transaction that could potentially be viewed as a merger or consolidation and/or Votum being a mere continuation of Tri-Coastal, there is nonetheless not a single fact that has been alleged that can be relied upon to support either determination.

## II.   PLAINTIFF FAILED TO STATE A CAUSE OF ACTION UPON WHICH RELIEF CAN BE GRANTED FOR A CLAIM OF ALTER EGO LIABILITY ALLEGED IN THE SIXTH COUNT OF THE AMENDED COMPLAINT.

The SIXTH COUNT of the Amended Complaint, albeit somewhat blurred, appears to be seeking to impose alter ego liability on Votum to hold it jointly and severally liable for Tri-Coastal's damages.

Piercing the corporate veil, also known as "alter ego liability," is a remedy that is involved when [a subservient] corporation is acting as an alter ego of [a dominant corporation.]" *Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.,* 296 F.3d 164, 171 (3d Cir.2002).  By piercing the corporate veil, a court "may impose liability on an individual or entity normally subject to the limited liability protections of the corporate form." *The Mall at IV Group Props., LLC v. Roberts,* No. 02–4692, 2005 WL 3338369, at *3 (D.N.J. Dec. 8, 2005); *see also Patel v. Pandya,* No. 14–8127, 2015 WL 4523283, at *6 (D.N.J. July 27, 2015). The New

Jersey Supreme Court has noted that the purpose of the doctrine is "to prevent an independent corporation from being used to defeat the ends of justice, to perpetuate fraud, to accomplish a crime, or otherwise to evade the law." *State v. Ventron Corp.,* 468 A.2d 150, 164 (N.J.1983).

Although common ownership and common management will not automatically give rise to common liability, courts will pierce the corporate veil to hold numerous closely held corporations and their owners liable where certain facts suggest that an agency or similar relationship exists between the entities, such as "when there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting. In such circumstances, in imposing liability upon one or more of a group of "closely identified" corporations, a court need not consider with nicety which of them ought to be held liable for the act of one corporation "for which the plaintiff deserves payment." *Stochastic Decisions, Inc. v. DiDomenico,* 565 A.2d 1133, (N.J.Super.Ct.App.Div.1989) (quoting *My Bread Baking Co. v. Cumberland Farms, Inc. et al.,* 233 N.E.2d 748, (1968)).

Plaintiff alleges as follows:

o   Both entities are co-mingled in such a fashion that Votum is a successor to Tri-Coastal. SIXTH COUNT, ¶2.

o   Votum expressly or impliedly assumed the liabilities of Votum. SIXTH COUNT, ¶3.

o   There is an actual or de facto consolidation or merger of both companies. SIXTH COUNT, ¶4.

o   Votum is a mere continuation of [ ] Tri-Coastal. SIXTH COUNT, ¶5.

o   Votum is attempting to fraudulently to escape liability. SIXTH COUNT, ¶6.

o   Tri-Coastal has pervasive control of Votum and/or Votum has pervasive control of Tri-Coastal. SIXTH COUNT, ¶7.

o There is a confused intermingling of activity between the two entities who are both engaged in a common enterprise with substantial disregard of the separate corporate forms or serious ambiguity about the manner and capacity in which the corporations and their representatives are acting. SIXTH COUNT, ¶8.

o Tri-Coastal has abused the privilege of incorporation by using Votum to perpetrate a fraud or injustice, or otherwise circumvent the law. SIXTH COUNT, ¶9.

In New Jersey, two elements must be shown to pierce the corporate veil: First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist. Second, the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice. See *The Mall at IV Grp. Properties, LLC v. Roberts*, No. CIV.A. 02-4692(WHW), 2005 WL 3338369, at *3 (D.N.J. Dec. 8, 2005). For the principle to apply, there *must be* a finding that the "parent so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent." *Id.* (citing 1 W. Fletcher, Cyclopedia of the Law of Private Corporations § 41.1 (Perm. ed.1974 rev.)). Liability is imposed only when the parent has abused the privilege of incorporation by using the subsidiary to perpetuate fraud or injustice. *Id.* (citing *Mueller v. Seaboard Comm. Corp.,* 73 A.2d 905, 908 (1950)); *see also Holzli v. DeLuca Enterprises,* No. 11–6148, 2012 WL 983693, at *2 (D.N.J. Mar. 21, 2012) (Simandle, J.) (piercing the corporate veil requires "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist.")

Here, there is a complete disconnect between the allegations and the purported cause of action. First, nowhere in the Amended Complaint is a parent/subsidiary relationship pled nor what has been pled even remotely supports such a relationship. In fact, not only does Plaintiff reference the Peaceful Possession Agreement which shows that Tri-Coastal is out of business and all of its assets transferred to IDB with a portion sold to an unrelated third-party and the remaining

22

liquidated with the proceeds applied against the unpaid loan, but the Amended Complaint actually alleges that no parent/subsidiary relationship exists involving Votum and Tri-Coastal:

- o "Michael Mastrangelo was a co-owner of Tri-Coastal. Marvin Stutz was a co-owner of Tri-Coastal. FIFTH COUNT, ¶34.

- o "Michael Mastrangelo, and/or his wife Beth Mastrangelo, and/or Marvin Stutz are the *de facto* owners Votum." FIFTH COUNT, ¶35.

- o The owner of Tri-Coastal Design Group, Inc. and Votum Enterprises, LLC are the same, or are of the same family, and have a common ownership interest. FIFTH COUNT, ¶38.

Thus, Plaintiff admits that Votum is not the parent of nor does it have any ownership interest in Tri-Coastal.  Likewise, Plaintiff admits that Tri-Coastal is not the parent of nor does it have any ownership interest in Votum.   Piercing either company's corporate veil doesn't get you to the other entity.

Second, the proverbial icing on the cake is that this cause of action is based upon the unsupported inference that "[t]here is an actual or de facto consolidation or merger of both companies" (Amend. Comp., SIXTH COUNT, ¶4) and the resulting intermingling of activity (Amend. Comp., SIXTH COUNT, ¶8).  As discussed more fully above, while Plaintiff sets forth a litany of allegations that purport to substantiate a connection between the two companies, the Amended Complaint fails to identify that an actual arrangement occurred whereby Tri-Coastal sold Votum substantially all of Tri-Coastal's assets.   The Amended Complaint supposes a consolidation or merger occurred sometime after Votum was formed and Tri-Coastal went out of business, but the only transaction it references is IDB's foreclosure pursuant to Article 9 of the UCC.  (Amend. Comp., FIFTH COUNT, ¶¶8-10).   Tri-Coastal, in fact, has been defunct since August, 2020, and Votum didn't commence doing business until September, 2020. *See* Levine Dec., ¶9, Ex. G (Initial Votum Operating Agreement). To that end, Plaintiff points to the execution of the Peaceful Possession Agreement (Amend. Comp., FIFTH COUNT, ¶31), which confirms

IDB foreclosed on Tri-Coastal's assets, and openly acknowledges there was a "voluntary surrender of some of Tri-Coastal's assets to IDB" (Amend. Comp., FIFTH COUNT, ¶36).   Plaintiff doesn't identify any transaction beyond the foreclosure and, the Bill of Sale, referenced in the related documents, confirms Tri-Coastal's assets were sold to Take Project and not to Votum.  *See* Levine Dec., ¶6, Ex. D (Bill of Sale).   The Letter Agreement confirms the remaining assets were liquidated and IDB used the proceeds to paydown the secured debt.  *See* Levine Dec., ¶5, Ex. C (Letter Agreement).  As a result, there is no basis for a judicial determination that a merger or consolidation arose (Amend. Comp., SIXTH COUNT, ¶4) or that Votum is a "mere continuation of [ ] Tri-Coastal" (Amend. Comp., SIXTH COUNT, ¶5).   Likewise, there couldn't be an intermingling of activity between Tri-Coastal and Votum since there was no operational overlap. *See* Levine Dec., ¶¶9 and 10, Ex. G (Initial Votum Operating Agreement) and Ex. H (Current Votum Operating Agreement).

It is also noteworthy that Plaintiff's allegation of intermingling is implausible because the party that purchased Tri-Coastal's assets, namely, Take Project, is unrelated to Votum.  In addition, the principals of Tri-Coastal do not have any ownership interest or management involvement in the purchaser.[9]

Lastly, although Plaintiff alleges "Votum is attempting to fraudulently to escape liability" (Amend. Comp., SIXTH COUNT, ¶6), it also openly admits there has been no attempt to conceal the lawful transfer of assets to IDB and ultimately to Take Project (Amend. Comp., FIFTH COUNT, ¶¶12-16).

---

[9] See discussion above regarding the plethora of unfounded inferences made in the Amended Complaint.

Taking all of Plaintiff's allegations as true, Plaintiff has failed to provide a sufficient basis to allow a claim for piercing the corporate veil to proceed.

---

## III.   THE COURT HAS THE POWER TO TREAT A 12(b)(6) MOTION AS A MOTION FOR SUMMARY JUDGMENT.

---

It is also noteworthy that *Bell Atl. Corp. v. Twombly*,  550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), do not suspend Fed.R.Civ.P 12(d)'s requirement that motions to dismiss relying on facts outside the pleadings be treated as motions for summary judgment.  While Defendants may not introduce their own facts to support their theory of the case, they may challenge Plaintiff's theory by invoking "obvious" alternative explanations for the alleged facts that rest on a broader background of knowledge and understandings.  In this case, such broader understanding is that the assets of Tri-Coastal were foreclosed upon by IDB, sold to a third-party, namely, Take Project, and Votum was not a party to the transaction (*see* discussion above). Moreover, the Court should give due consideration to the evidence which shows Votum's and Tri-Coastal's operations were never intermingled.

### CONCLUSION

For the reasons stated above and in the papers in support of this motion, the FIFTH COUNT and the SIXTH COUNT should be dismissed in all respects against Votum for failure of the Amended Complaint to state a claim on which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6).

Dated:  March 29, 2021    LAW FIRM OF TEDD S. LEVINE, LLC


        By: /s/Tedd S. Levine_____
         Tedd S. Levine, Esq.
         31 Dock Rd., Suite 162
         Remsenburg, NY 11960
         Tel:  (516) 770-3131
         email: lawofficesofteddslevine@ gmail.com

         *Attorneys for Defendant*
         *Votum Enterprises, LLC*