UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
-------------------------------------------------------X
A & E HARBOR TRANSPORT, INC.,           CIVIL ACTION

                Plaintiff,           Case No.: 2:20-cv-18509-SRC-CLW

        v.           **MOTION RETURN DATE:**
          May 17, 2021

TRI-COASTAL DESIGN GROUP, INC.,
and VOTUM ENTERPRISES, LLC,

                Defendants.

-------------------------------------------------------X

---

**MEMORANDUM OF LAW IN REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANT VOTUM ENTERPRISES LLC'S MOTION TO DISMISS
THE AMENDED COMPLAINT PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

---

Dated:  April 29, 2021                                Tedd S. Levine, Esq.
                                                                               On the brief

# TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | i |
| PRELIMINARY STATEMENT | | 1 |
| LEGAL ARGUMENT | | 2 |
| I. | PLAINTIFF RELIES ON AN IMPROPER PLEADING STANDARD. | 2 |
| II. | PLAINTIFF AGAIN FAILS TO ALLEGE A PRIMA FACIE CASE FOR SUCCESSOR LIABILITY. | 3 |
|  | A. Plaintiff fails to plead a particular transaction. | 3 |
|  | B. Plaintiff fails to plead intent on the part of the contracting parties to effectuate a merger or consolidation rather than a sale of assets. | 5 |
| III. | PLAINTIFF FAILS TO ALLEGE A PRIMA FACIE CASE FOR ALTER EGO LIABILITY. | 7 |
| IV. | THE COURT SHOULD ONLY ASSUME THE VERACITY OF WELL-PLED FACTUAL ALLEGATIONS. | 9 |
| CONCLUSION | | 11 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*40 Eisenhower Drive, LLC v. Karoon Capital Mkts.*,
2014 N.J. Super. Unpub. LEXIS 2860, at *10-11
(N.J. Super. Ct. App. Div. 2014) ................................................................. 4

*160 W. Broadway Assocs., LP v. 1 Mem'l Drive, LLC*,
No. A-2454-18, 2021 WL 922443, at *7
(N.J. Super. Ct. App. Div. Mar. 11, 2021) .................................................. 4

*A & E Harbor Transp., Inc. v. Tri-Coastal Design Grp., Inc.*,
No. CV 20-18509 (SRC), 2021 WL 663747, at *2
(D.N.J. Feb. 19, 2021) .......................................................................... 4, 5, 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................. 3, 6, 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................. 2, 3

*Bistrian v. Levi*,
696 F.3d 352, 365 (3d Cir. 2012) .................................................................. 9

*Carreiro v. Rhodes Gill & Co.*,
68 F.3d 1443, 1448 (1st Cir. 1995) ............................................................... 4

*Conley v. Gibson*,
355 U.S. 41 (1957) ........................................................................................ 2

*Craig v. Lake Asbestos of Quebec, Ltd.*,
843 F.2d 145, 149 (3d Cir. 1988) .................................................................. 7

*Glynwed, Inc. v. Plastimatic, Inc.*,
869 F. Supp. 265, 275–76 (D.N.J. 1994) ...................................................... 5

*Luxliner P.L. Export v. RDI Luxliner*,
13 F.3d 69, 73 (3d Cir.1993) ......................................................................... 5

*Pearson v. Component Tech. Corp.*,
247 F.3d 471, 485 (3d Cir. 2001) .................................................................. 7

*Publicker Indus., Inc. v. Roman Ceramics Corp.*,
603 F.2d 1065, 1069 (3d Cir. 1979) .............................................................. 7

|  | Page(s) |
|---|---|
| **Cases** | |
| S*tate, Dep't of Envtl. Prot. v. Ventron Corp.*, 94 N.J. 473 (N.J. 1983) | 7 |
| *Vision Pharma, LLC v. Sunrise Pharm., Inc.*, No. 2:13-CV-04692, 2018 WL 3085213, at *4 (D.N.J. June 20, 2018) | 5 |
| **Statutes** | |
| Fed. R. Civ. P. 12(b)(6) | 3 |
| **Other** | |
| 15 William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations § 7122 (2020) | 4 |

## PRELIMINARY STATEMENT

Plaintiff's opposition is based on the mistaken premise that more facts equal sufficient facts. Plaintiff concedes that while many of its critical allegations are missing or are merely legal conclusions, it still should be entitled to discovery. Defendant strongly disagrees. Such a façade does not excuse Plaintiff from failing to plead the essential elements for each cause of action. Although the Court must accept fact allegations in a complaint as true, it is not compelled to accept unsupported conclusions and unwarranted inferences or legal conclusions couched as factual allegations. Moreover, the Court should consider documents that are integral to or explicitly relied upon in the Amended Complaint which, in this case, contradict the allegations. Here, the Amended Complaint, despite asserting "38 paragraphs", much of which is inexplicably inconsistent, does not plausibly give rise to an entitlement to relief.

In an attempt to claim successor liability, Plaintiff sets forth a number of allegations, all of which merely go to bolster its sought-after judicial determination that a consolidation or a merger of Votum and Tri-Coastal occurred. Nonetheless, before the Court can even get to that point the underlying asset sale and purchase transaction needs to be identified which Plaintiff has again failed to plead. In fact, the Amended Complaint actually refers to the foreclosure by Tri-Coastal's secured lender (relying on the Peaceful Possession Agreement) and its sale of certain of Tri-Coastal's assets, not to Votum, but to an unrelated third-party. Likewise, Plaintiff also neglects to plead the other lynchpin of successor liability that Votum intended to assume Tri-Coastal's obligations.

Plaintiff also fails to plead facts necessary to convey Votum is the alter ego of Tri-Coastal and visa versa. Not only has no parent/subsidiary relationship been alleged (likely because it never existed) but what has been claimed is a divergent ownership structure that demonstrates Tri-

1

Coastal is out of business and all of its assets transferred to its lender. The documents referred to by Plaintiff and integral to its claims establish that the third-party that purchased Tri-Coastal's assets is unrelated to Votum and the principals of Tri-Coastal do not have any ownership interest or management involvement in such purchaser. Equally compelling, the Amended Complaint confirms no intermingling of activity between Tri-Coastal and Votum could have occurred since there was no operational overlap. Votum's Operating Agreement and the Peaceful Possession Agreement, both expressly relied upon in the Amended Complaint, demonstrate that Tri-Coastal ended before Votum began doing business.

In addition to below, Defendant refers the Court to its memorandum of law and declaration in support of this motion. For the reasons stated, Defendant's motion should be granted in its entirety.

## LEGAL ARGUMENT

### I.   PLAINTIFF RELIES ON AN IMPROPER PLEADING STANDARD.

Plaintiff argues that it has satisfied all of the pleading requirements under the Federal Rules, but responds to Defendant's motion to dismiss with inapposite authority. Specifically, Plaintiff cites to *Conley v. Gibson*, 355 U.S. 41 (1957) and its progeny of cases for the proposition that plaintiff need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id*. What Plaintiff fails to recognize is that in 2007, the United States Supreme Court overruled *Conley*, creating a new, stricter standard of pleading that requires specificity. Under the standard the Court set forth in *Conley*, a complaint need only state facts which make it "conceivable" that it could prove its legal claims. That is, that a court could only dismiss a claim if it appeared, beyond a doubt, that the plaintiff would be able to prove "no set of facts" in support of its claim that would entitle it to relief. In *Bell Atl. Corp. v. Twombly*, 550 U.S.

2

544 (2007), however, the court adopted the "plausibility" standard which requires enough facts to raise a reasonable expectation that discovery will reveal sufficient evidence. The *Twombly* reading was upheld in *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).

## II.  PLAINTIFF AGAIN FAILS TO ALLEGE A PRIMA FACIE CASE FOR SUCCESSOR LIABILITY.

### A. Plaintiff fails to plead a particular transaction.

Defendant's Rule 12(b)(6) motion challenges the Amended Complaint for not alleging sufficient facts to state a claim for relief. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.  While "detailed factual allegations" are unnecessary, the complaint must allege more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*  In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.

Here, not only is Plaintiff misguided as to what are the proper pleading tenets, it astonishingly doesn't even state facts which make its claims conceivable under the overruled *Conley* standard.  Contrary to Plaintiff's understanding, pleading more allegations doesn't give rise to a claim for relief for successor liability when such allegations fail to set forth the required elements.  As stated in Defendant's brief in support of this motion, this Court reasoned as follows when granting Defendant's motion to dismiss the Amended Complaint the first time:

3

> Plaintiff relies on *40 Eisenhower*[1], but the opposition brief fails to demonstrate that the Amended Complaint pleads the elements of successor liability as stated in that case. As Votum notes in reply, the quoted section from 40 *Eisenhower* describes an inquiry to be applied to a "particular transaction," but ***the Amended Complaint does not identify a particular transaction***, nor does the opposition brief. 2014 N.J. Super. Unpub. LEXIS 2860, at *10. 40 … Plaintiff's opposition brief makes no argument that the Amended Complaint pleads facts that make plausible the inference that there was such a contracting event … (emphasis added)

Taking another bite of the proverbial apple, Plaintiff's sole attempt to plead a "particular transaction" is its allegation that "an actual or de facto consolidation or merger" occurred. This is, however, woefully deficient. Again, nowhere in the Amended Complaint does Plaintiff identify the required asset sale and purchase agreement entered into by Votum and Tri-Coastal.

For the Court to entertain that Plaintiff's plethora of allegations give rise to a consolidation or merger, an unambiguous asset purchase and sale agreement must first be pled. The purported facts that Plaintiff argues the Court should look to do *not* come close to specifying that Votum (the accused successor) purchased substantially all of the assets of Tri-Coastal (the seller) but are only useful to support a possible judicial determination that a consolidation or merger could stem from such a transaction. "Most jurisdictions [including New Jersey] hold that a prerequisite to the imposition of liability against a corporation under any of the exceptions to the nonliability of successors *is a transfer or sale of all, or substantially all, the assets* of the predecessor to the successor. 15 William Meade Fletcher, <u>Fletcher Cyclopedia of the Law of Corporations</u> § 7122 (2020) (emphasis added); see *160 W. Broadway Assocs., LP v. 1 Mem'l Drive, LLC,* No. A-2454-18, 2021 WL 922443, at *7 (N.J. Super. Ct. App. Div. Mar. 11, 2021) citing *Carreiro v. Rhodes*

---

[1] *40 Eisenhower Drive, LLC v. Karoon Capital Mkts.,* 2014 N.J. Super. Unpub. LEXIS 2860, at *10-11 (N.J. Super. Ct. App. Div. 2014).

4

*Gill & Co.*, 68 F.3d 1443, 1448 (1st Cir. 1995) ("surveying treatises and case law and finding no mention nor even any hint that the 'mere continuation' or 'de facto merger' [exceptions] might apply in the absence of an asset transfer.")." Merely alleging there "[t]here is an actual or de facto consolidation or merger of both companies" (Amend. Comp., FIFTH COUNT, ¶3) is nothing other than an unsupported legal conclusion couched as a factual allegation.   Again, the required underlying transaction was never pled.

> **B. Plaintiff fails to plead intent on the part of the contracting parties to effectuate a merger or consolidation rather than a sale of assets.**

When previously granting Defendant's motion to dismiss the Amended Complaint, this Court reasoned further as follows:

> … *Eisenhower* concludes: "***the crucial inquiry is whether there was an intent on the part of the contracting parties to effectuate a merger or consolidation rather than a sale of assets***." Id. at *11. Plaintiff's opposition brief makes no argument that the Amended Complaint pleads facts that make plausible ... such an intent shared by Tri-Coastal and Votum management. (Emphasis added)  *A & E Harbor Transp., Inc. v. Tri-Coastal Design Grp., Inc.*, No. CV 20-18509 (SRC), 2021 WL 663747, at *2 (D.N.J. Feb. 19, 2021).

Likewise, citing *Luxliner P.L. Export v. RDI Luxliner,* 13 F.3d 69, 73 (3d Cir.1993), the Court in *Glynwed, Inc. v. Plastimatic, Inc.*, 869 F. Supp. 265, 275–76 (D.N.J. 1994) notes that the crucial inquiry is whether there was an "intent on the part of the contracting parties to effectuate a merger or consolidation rather than a sale of assets." See *Vision Pharma, LLC v. Sunrise Pharm., Inc.,* No. 2:13-CV-04692, 2018 WL 3085213, at *4 (D.N.J. June 20, 2018).

> The only possible hint by Plaintiff that there was such intent is as follows:
>
> o    … on September 21, 2020 Votum Enterprises, LLC began to pay the bills of Tri-Coastal Design Group, Inc. The plaintiff received a check for $2,815 from Votum Enterprises, LLC, drawn on Votum's bank account at Investors Bank, to satisfy ***one of the open invoices*** owed by Tri-Coastal Design Group, Inc. and owed to the plaintiff. (Emphasis added.) (Amend. Comp., FIFTH COUNT, ¶22)

5

- o In spite of same, **_Votum still paid at least one known debt of Tri-Coastal_** to the plaintiff. It is unknown at this time how many other debts were similarly paid. (Emphasis added.) (Amend. Comp., FIFTH COUNT, ¶23)

The allegation that Votum "began to pay the bills of Tri-Coastal …" based on making one payment of $2,815 is nothing other than a "mere conclusory statement[ ]" and doesn't even remotely make plausible there was an intent on the part of *both* contracting parties to effectuate a merger or consolidation rather than a sale of assets. *Iqbal*, 556 U.S. at 678.  Not only was no underlying sale of assets identified, but the only "intent" that Plaintiff actually pleads besides the one-sided view that "*Tri-Coastal* intended that Votum be a mere continuation of Tri-Coastal" is the admission that "[ ] *Votum* expressly or impliedly assumed the liabilities of *Votum*" itself and *not* Tri-Coastal.  (Emphasis added.) *See* Amend. Comp., FIFTH COUNT, ¶24; FIFTH COUNT, ¶2; and SIXTH COUNT, ¶3.

Moreover, making the Amended Complaint even more implausible is Plaintiff's reference to the Peaceful Possession Agreement.  *See* Amend. Comp., FIFTH COUNT, ¶31; *see also,* Levine Dec. in Supp., ¶5, Ex. C (Peaceful Possession Agreement).   Such agreement references the Letter Agreement; the Letter Agreement references the Bill of Sale.  *See* Levine Dec. in Supp., ¶7, Ex. E (Letter Agreement); *see* Levine Dec. in Supp., ¶6, Ex. D (Bill of Sale).  Exhibit A of the Peaceful Possession Agreement references both the "Surrendered Collateral" and the "Excluded Assets".  The Surrendered Collateral was sold to Take Project Srl (*see* Levine Dec. in Supp., ¶6, Ex. D (Bill of Sale) *not* Votum, and the Excluded Assets were liquidated by IDB and the proceeds applied against its unpaid loan (*see* Levine Dec. in Supp., ¶7, Ex. E (Letter Agreement).  Since Votum is not the contracting party, any inference it *intended* to assume the debts of Tri-Coastal in the context of such a sale is nonsensical.

6

It is also noteworthy that the Peaceful Possession Agreement provides, "[a]s of the close of business on August 24, 2020, Debtors are indebted to [IDB] for all obligations, liabilities and indebtedness arising under or in connection with the Loan Documents (the "Obligations") in the aggregate principal amount of not less than $10,164,401.49 ...." *See* Levine Dec. in Supp., ¶5, Ex. C, ¶1(a) (Peaceful Possession Agreement). As previously noted, to suggest a single payment of $2,815, which Votum contends was an error, should be viewed that Votum assumed all the obligations of Tri-Coastal, including the $10,164,401.49 due to IDB and $40,000,000.00 owed to unsecured creditors is not only implausible but is farfetched.

### III.   PLAINTIFF FAILS TO ALLEGE A PRIMA FACIE CASE FOR ALTER EGO LIABILITY.

When the corporate form is abused, both New Jersey state and federal common law provide courts the equitable remedy known as veil-piercing - also known as "alter ego liability" - to disregard the corporate entity and impose liability on the corporation's shareholders or parent corporation. *Pearson v. Component Tech. Corp.,* 247 F.3d 471, 485 (3d Cir. 2001) (*citing* Publicker Indus., Inc. v. Roman Ceramics Corp., 603 F.2d 1065, 1069 (3d Cir. 1979)). Under New Jersey law, piercing the corporate veil is appropriate where (1) "the parent so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent" and (2) "the parent has abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise to circumvent the law." *Craig v. Lake Asbestos of Quebec, Ltd.,* 843 F.2d 145, 149 (3d Cir. 1988); see also S*tate, Dep't of Envtl. Prot. v. Ventron Corp.*, 94 N.J. 473 (N.J. 1983).

Despite Plaintiff opining it has set forth "38 paragraphs" of allegations, the Amended Complaint actually alleges that *no* parent/subsidiary relationship exists involving Votum and Tri-Coastal:

- o  "Michael Mastrangelo was a co-owner of Tri-Coastal. Marvin Stutz was a co-owner of Tri- Coastal. FIFTH COUNT, ¶34.

- o  "Michael Mastrangelo, and/or and his wife Beth Mastrangelo, and/or Marvin Stutz are the *de facto*[2,3] owners Votum." FIFTH COUNT, ¶35.

- o  The owner of Tri-Coastal Design Group, Inc. and Votum Enterprises, LLC are the same, or are of the same family, and have a common ownership interest. FIFTH COUNT, ¶38.

Thus, regardless of what both companies purportedly have in common, such as ownership, product lines, counsel, and certain management, none of these criteria considered together or apart satisfy a *prima facie* claim for alter ego liability. In fact, Plaintiff admits that Votum is not the parent of nor does it have any ownership interest in Tri-Coastal. Likewise, Plaintiff admits that Tri-Coastal is not the parent of nor does it have any ownership interest in Votum. Piercing either company's

---

[2] It is noteworthy that the claim that a party is a "*de facto*" owner is a legal conclusion couched as factual allegation.

[3] Plaintiff cites the Operating Agreement of Votum, suggesting that it "shows that Michael Mastrangelo is the Operating Manager. Michael Mastrangelo is the President. The Operating Agreement also appoints Michael Mastrangelo as President and Marvin Stutz as Co-President of Votum." *See* FIFTH COUNT, ¶33; *see also,* Levine Dec. in Supp., ¶¶9 and 10, Ex. G (Initial Votum Operating Agreement) and Ex. H (Current Votum Operating Agreement). What Plaintiff conveniently ignores, however, is that the Votum Operating Agreement states that Votum is owned by two irrevocable trusts not by Michael Mastrangelo, and/or and his wife Beth Mastrangelo, and/or Marvin Stutz. *See also,* reference to "Prego Trust". FIFTH COUNT, ¶37.

8

corporate veil doesn't get you to the other entity. Stating "Tri-Coastal has pervasive control of Votum" and/or "Votum has pervasive control of Tri-Coastal" is once again nothing other than a mere conclusory statement not only unsupported but actually contradicted by the factual allegations in the Amended Complaint.

### IV. THE COURT SHOULD ONLY ASSUME THE VERACITY OF WELL-PLED FACTUAL ALLEGATIONS.

The Amended Complaint is not simply inartfully crafted but is fraught with contradictions and legal conclusions (see above) which go to the heart of Plaintiff's claims. To that end, it is well established that a court should only assume the veracity of well-pled factual allegations, and then "determine whether they plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). (*quoting* Iqbal, 556 U.S. at 679). In addition to the legal conclusions couched as factual allegations, the following should also be disregarded:

- o "The defendant Votum Enterprises, LLC is a successor interest to the defendant Tri-Coastal Design Group, Inc." FIFTH COUNT, ¶7. "Tri-Costal intended that Votum be a mere continuation of Tri-Coastal." FIFTH COUNT, ¶24. "… on September 21, 2020 Votum Enterprises, LLC began to pay the bills of Tri-Coastal Design Group, Inc. …" FIFTH COUNT, ¶22. These allegations are contradicted by "[ ] *Votum* expressly or impliedly assumed the liabilities of *Votum*." FIFTH COUNT, ¶2; SIXTH COUNT, ¶4. (Emphasis added).[4]

- o "There is an actual … consolidation or merger of both companies." FIFTH COUNT, ¶3 and SIXTH COUNT, ¶4. This allegation is contradicted by "Less than one month later, on August 24, 2021, Tri-Coastal then executed the Peaceful Possession of Collateral agreement."[5] FIFTH COUNT, ¶31.

---

[4] "[T]he crucial inquiry is whether there was an intent on the part of the contracting parties to effectuate a merger or consolidation rather than a sale of assets." See *A & E Harbor Transp., Inc. v. Tri-Coastal Design Grp., Inc.*, No. CV 20-18509 (SRC), 2021 WL 663747, at *2 (D.N.J. Feb. 19, 2021). For these allegations to be plausible, Votum would have had to assume the liabilities of *Tri-Coastal*.

[5] The Peaceful Possession Agreement references the Letter Agreement; the Letter Agreement references the Bill of Sale. *See* Levine Dec. in Supp., ¶5, Ex. C (Peaceful Possession Agreement),

9

- o "Tri-Coastal only transferred some of its assets to IDB but retained, and continues to retain, other valuable assets." FIFTH COUNT, ¶16.  This allegation is likewise contradicted by "Less than one month later, on August 24, 2021, Tri-Coastal then executed the Peaceful Possession of Collateral agreement."[5] FIFTH COUNT, ¶31.

- o "Michael Mastrangelo was a co-owner of Tri-Coastal.  Marvin Stutz was a co-owner of Tri- Coastal." FIFTH COUNT, ¶34.  "Michael Mastrangelo, and/or and his wife Beth Mastrangelo, and/or Marvin Stutz are the *de facto*[6] owners Votum." FIFTH COUNT, ¶35.  "The owner of Tri-Coastal Design Group, Inc. and Votum Enterprises, LLC are the same, or are of the same family, and have a common ownership interest." FIFTH COUNT, ¶38.  These allegations are contradicted by reference to the "Operating Agreement"[7] which shows Votum is owned by two irrevocable trusts. FIFTH COUNT, ¶33; *see also,* Levine Dec. in Supp., ¶¶9 and 10, Ex. G (Initial Votum Operating Agreement) and Ex. H (Current Votum Operating Agreement); *see also,* reference to the "Prego Trust". FIFTH COUNT, ¶37.

- o "There is a continuity of … physical location ..." FIFTH COUNT, ¶6.  This allegation is contradicted by Plaintiff's attachments to the Amended Complaint which show Votum's address to be 1 Cardinal Drive, Little Falls, NJ (*see* Certificate of Formation and copy of check) and Tri-Coastal's address to be 40 Harry Shupe Blvd., Wharton, NJ (*see* copy of invoice).

---

¶7, Ex. E (Letter Agreement); ¶6, Ex. D (Bill of Sale).  These documents confirm the "Surrendered Collateral" was sold to Take Project Srl (Bill of Sale) *not* Votum, and the "Excluded Assets" were retained and liquidated by IDB with the proceeds applied against its unpaid loan (Letter Agreement).  No assets were retained by Tri-Coastal.

[6] It is noteworthy that the claim that a party is a "*de facto*" owner is a legal conclusion couched as factual allegation.  This requires a judicial determination.

[7] Plaintiff cites the Operating Agreement of Votum, suggesting that it "shows that Michael Mastrangelo is the Operating Manager. Michael Mastrangelo is the President. The Operating Agreement also appoints Michael Mastrangelo as President and Marvin Stutz as Co-President of Votum."  *See* FIFTH COUNT, ¶33; *see also,* Levine Dec. in Supp., ¶¶9 and 10, Ex. G (Initial Votum Operating Agreement) and Ex. H (Current Votum Operating Agreement).   What Plaintiff conveniently ignores, however, is that the Votum Operating Agreement states that Votum is owned by two irrevocable trusts not by Michael Mastrangelo, and/or and his wife Beth Mastrangelo, and/or Marvin Stutz.  *See also,* reference to the "Prego Trust". FIFTH COUNT, ¶37.

- o "If Votum and Tri-Coastal indeed had different … banks then it would have impossible for Votum to have paid the debt of Tri-Coastal." FIFTH COUNT, ¶27.  This allegation is contradicted by the attachment to the Amended Complaint (copy of check) which shows Votum's bank is Investors Bank, and the allegations "Tri-Coastal only transferred some of its assets to IDB but retained, and continues to retain, other valuable assets" and "Less than one month later, on August 24, 2021, Tri-Coastal then executed the Peaceful Possession of Collateral agreement", which confirm that Tri-Coastal's bank was IDB *not* Investors Bank. FIFTH COUNT, ¶¶16 and 31.

## CONCLUSION

For the reasons stated above and in the papers in support of this motion, the FIFTH COUNT and the SIXTH COUNT should be dismissed in all respects against Votum for failure of the Amended Complaint to state a claim on which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6).

Dated: April 29, 2021                                LAW FIRM OF TEDD S. LEVINE, LLC

By:  /s/Tedd S. Levine
Tedd S. Levine, Esq.
31 Dock Rd., Suite 162
Remsenburg, NY 11960
Tel: (516) 770-3131
email: lawofficesofteddslevine@ gmail.com

*Attorneys for Defendant*
*Votum Enterprises, LLC*

11